## William F. ALLEN, Claimant–Appellant,

### v.

## Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

### No. 99–7199.

United States Court of Appeals, Federal Circuit.

Feb. 2, 2001.

Ronald L. Smith, Disabled American Veterans, of Washington, DC, argued for claimant-appellant. With him on the brief was Stephen L. Purcell.

Michael S. Dufault, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director, and Robert E. Kirschman, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel, and Michael J. Timinski, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, MICHEL and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

William F. Allen appeals the order of the United States Court of Appeals for Veterans Claims ("Veterans Court") vacating a November 26, 1997 Board of Veterans' Appeals ("Board" or "BVA") decision which denied increased disability compensation and remanded the case for further proceedings. In its one-judge order, the Veterans Court instructed the Board that its interpretation in *Barela v. West*, 11 Vet.App. 280 (1998), of 38 U.S.C. § 1110, as amended by § 8052(a)(2) of the Omnibus Budget Reconciliation Act of 1990 ("OBRA"), Pub.L.No. 101–508, 104 Stat. 1388, 1388–91, was "binding precedent" and barred recovery to the extent that Allen sought increased compensation for his alcohol abuse disability, either as secondarily service-connected or as evidence of the increased severity of his service-connected Post Traumatic Stress Disorder ("PTSD"). We hold that we have jurisdiction over this remand order because the Veterans Court's interpretation of the statute will affect the remand proceeding, and our future review may be evaded. We further hold that § 1110, when read in light of its legislative history, does not preclude a veteran from receiving compensation for alcohol or drug-related disabilities arising secondarily from a service-connected disability, or from using alcohol or drug-related disabilities as evidence of the increased severity of a service-connected disability. Therefore, we reject the Veterans Court's statutory interpretation of § 1110 and to that extent reverse the court's order, and remand for proceedings in accordance with the interpretation of § 1110 as set forth herein. The part of the order remanding to the Board for proper application of the rating criteria is affirmed.

## Background

Allen served on active duty in the United States Marine Corps from September 1965 to September 1969. Allen alleges that he suffers from PTSD resulting from his service. He also alleges that he suffers an alcohol abuse disability that arises as a symptom of his PTSD.

Allen seeks increased monetary compensation for both his PTSD disability and for his alcohol abuse disability. He argues that the existence of his alcohol abuse disability should be considered in determining his disability rating and his compensation level.

On August 18, 1993, the Boston, Massachusetts Veterans Administration Regional Office ("RO") of the Department of Veterans Affairs ("VA") granted Allen a 30 percent disability rating for service-connected PTSD effective from June 1992. In October 1994, Allen filed a claim for an increased rating. The RO issued a rating decision in June 1995, refusing an increase but confirming the 30 percent disability rating. On August 28, 1996, Dr. Victoria Russell conducted a VA Compensation and Pension Examination to determine the severity of Allen's PTSD and to ascertain whether there was a relationship between Allen's PTSD and his alcohol abuse. Dr. Russell wrote that "[t]he reason for [Allen's] alcohol admissions had to do with his rapidly accelerating symptoms of [PTSD]." The doctor diagnosed Allen with severe PTSD along with chronic alcohol abuse and dependence, in remission, as secondary to PTSD. In November 1996, the RO issued a rating confirming the 30 percent disability evaluation for PTSD and again declining an increased rating.

On June 6, 1997, however, following a psychiatric hospitalization, the RO increased Allen's disability rating to 50 percent, effective from October 13, 1994. The rating also included a temporary total disability rating under 38 C.F.R. § 4.29 for a period of 45 days prior to April 1, 1997. Although the RO considered Allen's prior hospitalizations in determining his rating, the RO did not consider the August 1996 Compensation and Pension Examination in evaluating whether Allen was entitled to an increased rating above 50 percent.

Allen appealed the denial of a rating higher than 50 percent to the Board. On

November 26, 1997, the Board upheld the RO and denied a higher rating. The Board said that "alcohol abuse may not be service[-]connected, on either a direct or secondary basis, and impairment from non-service-connected substance abuse may not be considered when evaluating the severity of the service-connected PTSD." In order to receive a 70 percent rating, the next available step above 50 percent, the Board required Allen to demonstrate both occupational impairment and social impairment. In considering all of the evidence, the Board found that "the record ... demonstrates that the veteran's employability has been seriously undermined by his history of alcohol abuse and dependence," but that Allen's PTSD was "not the only factor influencing his industrial [occupational] impairment." The Board also found that Allen failed to produce sufficient evidence to demonstrate social impairment. On March 25, 1998, Allen filed a timely appeal to the Veterans Court.

On July 12, 1999, the Veterans Court vacated the Board's decision and remanded for a further evidentiary hearing. Both Allen and the Secretary of Veterans Affairs ("the Secretary") agreed that a remand was required in light of the Veterans Court's opinion in *Barela*, which had been issued subsequent to the Board's November 26, 1997 decision. *Barela* held that § 1110 precludes a veteran from receiving compensation for disabilities due to alcohol or drug abuse. *Barela*, 11 Vet.App. at 283. The *Barela* court, however, added that § 1110 does not bar an award of service-connection for alcohol or drug abuse. *Id.* An award of service-connection would entitle a veteran to benefits such as educational assistance to a veteran's dependents, or housing loan benefits for the veteran. *See* 38 U.S.C. §§ 3510, 3501(a)(1), 3702(a)(1), 3702(2)(b) (1994). It would not entitle the veteran to any increase in disability compensation.

In Allen's case, the Veterans Court remanded in order for the Board to apply the court's interpretation of § 1110 as set forth in *Barela*. Allen had argued that *Barela* was "wrongly decided to the extent that it held that the law prohibits the payment by VA of compensation for alcohol abuse either on a secondary-service-connection basis or as evidence of an increase in the severity of a service-connected disability." The Veterans Court, however, rejected Allen's interpretation of § 1110 and stated that *Barela* was "binding precedent" to the extent that Allen "seeks compensation based either on alcohol abuse secondary to service-connected PTSD or 'an increase in his rating for service-connected PTSD based on manifestations of PTSD symptomatology, i.e., alcohol or drug abuse.' " If, on remand, the Board found service-connection, Allen or his relatives could still receive educational or housing benefits under title 38. Allen could not, on remand, under the Veterans Court's interpretation of § 1110 in Allen's case and in *Barela*, recover additional disability compensation pursuant to an increase in his schedular rating due to his alcohol abuse disability secondary to his PTSD, or as evidence of the increased severity of his PTSD.

The Veterans Court also remanded for the Board to correctly apply the Secretary's rating criteria. The Court concluded that the Board erred in its application of Diagnostic Code 9411 ("DC 9411") by requiring Allen to exhibit both occupational [industrial] and social impairment. *See* 38 C.F.R. § 4.13 (1996); 38 C.F.R. § 4.30 (1996) (setting forth criteria for 100 percent rating); *Johnson v. Brown*, 7 Vet. App. 95, 99 (1994) (remanding to see if veteran met one criterion). On remand, the court ordered the Board to: 1) consider whether Allen meets any one of the schedular criteria for a 100 percent schedular rating for his service-connected PTSD; and if not: to 2) consider whether he meets any one criterion for a 70 percent schedular rating for his service-connected PTSD. The Veterans Court issued its order on August 3, 1999. Allen filed a timely notice of appeal to this court on September 22, 1999.

## Decision

Allen believes that his alcohol abuse disability should be considered in determining his proper rating level for his PTSD disability which was already held to be service-connected. He only seeks disability compensation; he does not seek any non-pension benefits to which veterans and their relatives may be entitled to under title 38. Allen seeks additional disability compensation because of his alcohol abuse disability under two alternative theories. The first theory concerns whether Allen's alcohol abuse disability is secondary to his PTSD. The second theory is based on the premise that even if Allen's alcohol abuse disability is not secondarily service-connected, Allen should still be able to obtain an increase in his rating level by relying on the alcohol abuse as evidence of the increased severity of his PTSD.

### A. Jurisdiction

■ The Veterans' Judicial Review Act, Pub.L.No. 100–687, Div. A, 102 Stat. 4105 (1988), grants this court jurisdiction to hear appeals from the Veterans Court. The Act was codified in title 38 of the United States Code. Section 7292(a) states in pertinent part that "[a]fter a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof." 38 U .S.C. § 7292(a) (1994). Under our case law, however, our jurisdiction is limited to the review of *final* decisions of the Veterans Court, which usually does not include remands. *See Travelstead v. Derwinski,* 978 F.2d 1244, 1247–49 (Fed.Cir.1992); *Dambach v. Gober,* 223 F.3d 1376, 1379 (Fed.Cir.2000). This so-called "final judgment rule" ordinarily limits our jurisdiction to appeals from a decision or order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (internal citation omitted). There are, however, exceptions to the final judgment rule. Thus, the critical issue raised by this appeal is whether such an exception applies in this case.

■ Our precedents have broadly stated that our jurisdiction over a veteran's case is proper "when the remand disposes of an important legal issue that would be effectively unreviewable at a later stage of the litigation." *Grantham v. Brown,* 114 F.3d 1156, 1159 (Fed.Cir.1997); *Travelstead,* 978 F.2d at 1247–49. In *Travelstead,* the *Secretary,* not the veteran, appealed a Veterans Court's decision, remanding to the Board for a "proper adjudication of [Travelstead]'s entitlement to a release of liability." *Id.* at 1246. This court held that despite the final judgment rule, our jurisdiction was proper, noting that the Veterans Court "rendered a 'decision' interpreting a statute ... and compel[led] action of the Secretary, on remand, contrary to the Secretary's prior ruling." *Id.* at 1248. The court said that the Veterans Court's remand order "was unquestionably a 'judgment,' as it terminated the civil action challenging the Secretary's final determination ... set aside that determination and finally decided that the Secretary could not follow his own regulations in considering the disability issue." *Id.* The court added that there would be "grave doubt" as to whether the Secretary could appeal his own order if on remand the Secretary undertook "the inquiry mandated by the [Veterans Court]." *Id.; see also Jones v. West,* 136 F.3d 1296, 1298 (Fed. Cir.1998) (holding that this court had jurisdiction over the Secretary's appeal of a statutory interpretation in a remand order).

■ In *Dambach,* this court applied *Travelstead* to find jurisdiction when a *veteran* appealed the Veterans Court's interpretation of a statute in a remand order. *Dambach,* 223 F.3d at 1379. The veteran in *Dambach* argued that 38 U.S.C. § 1154(b) was applicable to his case. *See id.* Section 1154(b) requires the VA to accept "satisfactory lay or other evidence" as sufficient proof of service-connection for

any illness or injury alleged to have incurred in combat, when official service medical records proving such incurrence do not exist. The Veterans Court held that the statute did not apply to any illness incurred during combat when there is such a record documenting at least one in-service illness. *Id.* at 1380. Dambach appealed the Veterans Court's remand order to this court, arguing: 1) that the Veterans Court erred in affirming the Board's interpretation of § 1154(b); and 2) that the Veterans Court decision was a "final decision" on the § 1154(b) issue that "must be resolved before remanding the case to the [B]oard to establish the parties' evidentiary burdens." *Id.* at 1379. On appeal, this court held that jurisdiction was proper "when there is a statutory interpretation that will affect the remand proceeding and that legal issue might evade our future review." *Id.* In Dambach's case, this court said that because the Veterans Court's interpretation of the statute would "alter the evidentiary burdens" on proving service-connection in the remand proceeding and thus "affect" the remand proceeding, the circumstances of the remand might "make unreviewable the determination that § 1154(b) cannot be applied to a veteran with a service medical report." *Id.*

Our decision on jurisdiction here is governed by *Dambach.* The *Dambach* court held that we have jurisdiction when the Veterans Court's interpretation of a statute *"will* affect" the remand proceeding, and "that legal issue *might* evade our future review." *Dambach,* 223 F.3d at 1379 ("[T]he remand *may* make unreviewable the determination that [the statute] cannot be applied to a veteran …") (emphasis added). In Allen's case, the Veterans Court's interpretation of § 1110 clearly will affect the remand proceeding. Although the evidentiary burden will not shift here, as in *Dambach,* the Veterans Court's reliance upon its prior interpretation in *Barela* of § 1110 effectively forecloses the Board from considering whether Allen's alcohol abuse disability could be used in evaluating his proper rating level

and thus in determining compensation due for his service-connected disability.

This case is thus distinguishable from *Winn v. Brown,* 110 F.3d 56 (Fed.Cir. 1997). In *Winn,* the veteran challenged the validity of a regulation. *Id.* at 57. Although the Veterans Court stated that the regulation was valid, without relying on the regulation, it remanded Winn's claim to the Board for further fact finding on the merits of his particular asserted disorder. *Id.* On remand, Winn could have won or lost "on the facts of his case without regard to the regulation he … challenge[d]." *Id.* This court held that we did not have jurisdiction, because the Veterans Court remand decision was not a final judgment. *Id.* Unlike Winn, however, Allen cannot "win" on remand, because no matter what facts the Board finds on the issue of secondary service-connection, Allen cannot rely on his alcohol abuse disability to increase his rating level, either by demonstrating secondary service-connectedness or as proof of the increased severity of his PTSD. *See Winn,* 110 F.3d at 57 ("[I]f the regulation had been relied upon by the [Veterans Court] in reaching its decision, then … Winn may have proper standing to challenge its validity before this court."). Thus, the Veterans Court's order, here, will unquestionably affect the remand proceeding, as the Veterans Court's erroneous interpretation of the statute, on which it plainly relied, completely precludes Allen from using his alcohol abuse disability to increase his rating level.

It is also possible that we would not have the opportunity to review the statutory interpretation issue later in the litigation. On remand, the Board will apply *Barela,* a case that issued subsequent to its November 27, 1997 decision, to the facts of Allen's case. Although Allen would be entitled to submit additional evidence in the remand proceeding, he only seeks to submit additional evidence relating to his alcohol abuse; he does not plan to submit any additional evidence on the

increased severity of his non-alcohol-related PTSD symptoms. The Board, on remand, could decide that Allen is not secondarily service-connected for his alcohol abuse. The Board on remand will also reapply DC 9411 to determine whether Allen is entitled to an increased rating for his PTSD. If his claim is denied, Allen could then appeal to the Veterans Court which would review under a clearly erroneous standard the factual issues of: 1) whether Allen is secondarily service-connected; and 2) the application of the criteria under DC 9411 for PTSD. *See* 38 U.S.C. § 7261(a)(4) (1994). The issue of whether alcohol abuse can be used as *evidence* of the increased severity of PTSD might not be reviewable, because the Board's decision might not include a statutory interpretation issue that the Veterans Court could review pursuant to 38 U.S.C. § 7261(a). This court, in turn, might not be able to review the Veterans Court's decision because we cannot review appeals challenging factual determinations or the law as applied to the facts of the particular case, unless there is a constitutional issue present. *See* 38 U.S.C. § 7292(d)(2)(1994). None is presented here. In essence, then, the factual issues of this case could become entangled so as to defeat our future review of the statutory issue.

Indeed, it would be a grave injustice to the veteran to decline jurisdiction where it may not be possible for us to review the case at a later date, and where future appeals below would be futile and burdensome. The remand on secondary service-connectedness, as mandated by the Veterans Court, is utterly moot, because Allen could only receive non-disability benefits for himself or his relatives, benefits that he is not seeking. Since Allen plans to submit no additional evidence relating to any non-alcohol-related PTSD symptoms, there is grave doubt as to whether he would be entitled to a higher rating for his PTSD. Further, it is burdensome to the veteran to undergo needless and futile additional proceedings when the Veterans Court erroneously interprets a statute. Future proceedings may last for years. In the meantime, those veterans erroneously denied compensation to which they are entitled and who depend on such compensation as a substitute for lost wages are severely harmed by the delay.

That the Veterans Court also remanded to the Board for a correct application of the Secretary's rating criteria for evaluating Allen's rating for PTSD also does not render the challenged decision non-final. In theory, on remand, Allen could get a 100 percent rating. However, the fact that Allen could receive a total disability rating is belied by the fact that Allen will not introduce additional evidence on any non-alcohol-related disability, and is precluded from introducing evidence of his alcohol disability. The Board already found that Allen failed to demonstrate occupational or social impairment. This renders the remand proceeding meaningless. Further, under 38 U.S.C. § 1114(s), a veteran with a service-connected disability rated as total and who is permanently housebound as a result of the veteran's service-connected disability or disabilities can recover compensation in excess of the amount specified for a 100 percent schedular rating. Although such recovery is rare, it is still conceivable that Allen could recover additional compensation.

We would also note that we decline the invitation implicit in Allen's citation as supplemental authority to extend the jurisdictional holding of *Elkins v. Gober*, 229 F.3d 1369 (Fed.Cir.2000), to the facts of this case. In *Elkins*, we held that the veteran's neck argument and headache claim, which the Veterans Court remanded, were separable from the veteran's back claim, which it denied. *Id.* at 1377. In deciding that our jurisdiction was proper over the back claim, we noted that our court "has consistently recognized that the various claims of a veteran's overall 'case' may be treated as distinct for jurisdictional purposes." *Id.* at 1373. The holding of *Elkins* does not control the outcome of this case since Allen's case does not consist of separate and distinct claims.

## B.  Interpretation of § 1110

■ This court has jurisdiction to review any decision of the Veterans Court regarding "the validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a).  We review interpretations of a statute by the Veterans Court de novo.  38 U.S.C. § 7292; *Prenzler v. Derwinski,* 928 F.2d 392, 393 (Fed.Cir.1991).

■■ "The starting point in every case involving construction of a statute is the language itself." *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed. Cir.1989).  The court will then look to the legislative history if the statutory language is unclear.  *See, e.g., Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("Where ... resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.").  Section 1110, when read in light of its legislative history, does not preclude a veteran from receiving compensation for an alcohol or drug abuse disability acquired as secondary to, or as a symptom of, a veteran's service-connected disability.  Because the Veterans Court's interpretation of § 1110 is contrary to law, we overrule its interpretation of § 1110 and remand for proceedings in accordance with the interpretation as set forth herein.

### 1.  The Veterans Court's Interpretation of § 1110 in *Barela*

Section 1110 precludes compensation for disabilities arising from the veteran's own willful misconduct or abuse of alcohol or drugs.  Section 1110 reads (emphasis added):

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who

was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, *but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.*

The previous version of the statute, 38 U.S.C. § 310, Pub.L.No. 85–857, 72 Stat. 1119 (repealed 1958), stated that "no compensation shall be paid if the disability is a result of the veteran's own willful misconduct."  In amending the statute, Congress added the phrase "or abuse of alcohol or drugs."  The 1990 amendments also added the same phrase to 38 U.S.C. § 105(a), defining the term "line of duty" referred to in § 1110.  *See* Pub.L.No. 101–508, § 8052(b), 104 Stat. 1388 (codified as amended at 38 U.S.C. § 105(a) (1990)).

The Veterans Court in *Barela* interpreted § 1110 to prohibit compensation for a disability in any way related to alcohol or drug abuse.  *See Barela,* 11 Vet.App. at 282.  Barela sought entitlement to service-connection for his alcohol and drug abuse disabilities secondary to his PTSD. *Id.* at 281.  The Board denied his claim, and stated that "payment for any disability that is the result of a veteran's abuse of alcohol or drugs is statutorily prohibited" by § 1110. *Id.* at 282.  The Board noted that under 38 C.F.R. § 3.310(a), "[w]hen service connection is ... established for a secondary condition, the secondary condition [is] considered a part of the original condition." *Id.* The Board then referred to the opinion of the VA General Counsel regarding how 38 C.F.R. § 3.310(a) applied to a situation like Barela's.  *See* O.G.C. Prec. Op. 2–97 (Jan. 16, 1997).  In O .G.C. 2–97, the VA General Counsel stated that 38 C.F.R. § 3.310(a) "does not reflect [§ 1110]'s prohibition on the payment of compensation for a substance-abuse disability whatever its origin." *Id.* Accordingly, the Board found that "since

the authority to compensation for [a] secondarily service-connected disability [under 38 C.F.R. § 3.310] derives from 38 U.S.C. [ ] § 1110, determinations regarding secondary service-connection are also subject to the prohibition against payment for alcohol and substance abuse disabilities." *Barela,* 11 Vet.App. at 282; *see also* O.G.C. Prec. Op. 7–99 (June 6, 1999) ("[D]isability compensation, which for a substance-abuse disability is prohibited outright under 38 U.S.C. § 1110 ... cannot be paid for a substance abuse disability which is service[-]connected on either a direct or secondary basis."). As a result, the Board said that "[s]ervice connection for alcohol or drug abuse, claimed as secondary to service-connected [PTSD] ... is prohibited by law." *Barela,* 11 Vet.App. at 282.

On appeal, the Veterans Court agreed with the Board that § 1110 prohibits compensation for alcohol or drug abuse disabilities. The Veterans Court held that the "clear and unambiguous" language of § 1110 bars compensation for "disabilities which are the result of alcohol or substance abuse whether the claim is based on direct service[-]connection or, under 38 C.F.R. § 3.310(a), on secondary service[-]connection." *Id.* at 282–83. The court said that "[t]he word 'no' is clear and unequivocal; it brooks no exceptions or limitations. As this court has stated previously and often, '[w]here a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe.'" *Id.* at 283 (internal citations omitted). In Allen's case, the Veterans Court applied *Barela* and held that it was "binding precedent" to the extent Allen sought "compensation based either on alcohol abuse secondary to service-connected PTSD or 'an increase in his rating for service-connected PTSD based on manifestations of PTSD symptomatology, i.e., alcohol or drug abuse.'"

2. Textual Analysis of § 1110

■ We disagree with the Veterans Court's interpretation of § 1110 in *Barela* and as restated in its remand order in this case. We think the best interpretation of the statute is that it precludes compensation only in two situations: 1) for primary alcohol abuse disabilities; and 2) for secondary disabilities (such as cirrhosis of the liver) that result from primary alcohol abuse. By "primary," we mean an alcohol abuse disability arising during service from voluntary and willful drinking to excess. We do not think that the language of § 1110 precludes compensation in the third situation—i.e., Allen's alleged case—where an alcohol abuse disability arises secondarily from or as evidence of the increased severity of a non-willful misconduct, service-connected disorder. By using the terms "disability resulting from" or "disability [that] is a result of," we think that Congress intended the *cause* of the disability to be determinative in assessing whether, under § 1110, a disability qualifies for either authorization for compensation under the provision or whether it fits within the language of express exclusion from compensation. For purposes of determining whether a veteran is entitled to compensation, § 1110, in its first line, refers to "disability *resulting from* personal injury suffered or disease contracted in line of duty," and "aggravation of a preexisting injury suffered or disease contracted in line of duty." The last line of § 1110 contains an express exclusion from recovery: "no compensation shall be paid if the *disability is a result* of the veteran's own willful misconduct or abuse of alcohol or drugs." The final six words were added by the 1990 amendment. Thus, compensation is authorized if the disability is *caused by* an "injury suffered or disease contracted in line of duty." Compensation is precluded if the disability is *caused by* "the veteran's own ... abuse of alcohol or drugs."

Section 1110's words of authorization ("[f]or disability resulting from"), as well as its words of express exclusion, clearly preclude a veteran from receiving compensation for a primary alcohol abuse disability. Section 1110 requires that a "disability resulting from personal injury or disease

[be] contracted in *line of duty* ... " (emphasis added). Section 105(a), which was also amended by the 1990 Act, defines "line of duty" as follows:

> An injury or disease incurred during active military, naval, or air service will be *deemed* to have been *incurred in line of duty* and not the result of the veteran's own misconduct *when* the person on whose account benefits are claimed was, at the time the injury was suffered or the disease contracted, *in active* military, naval, or air *service,* whether on active duty or an authorized leave, *unless* such injury or disease was *a result of the person's* own willful misconduct or *abuse of alcohol or drugs.*

38 U.S.C. § 105(a) (emphasis added). Section 105(a) thus expressly provides that an injury or disease incurred during active service is not deemed to have been incurred "in line of duty" if the injury or disease is "a result of the person's own ... abuse of alcohol or drugs." Consequently, a primary alcohol abuse disability would not be deemed to have been incurred in line of duty. In adding the same phrase—"or abuse of alcohol or drugs"—to the final clause in both § 1110 and § 105(a), Congress made clear that a primary alcohol abuse disability does not fit within § 1110's words of authorization for compensation ("[f]or disability resulting from personal injury suffered or disease contracted in *line of duty* ") (emphasis added). A primary alcohol abuse disability, moreover, is included within § 1110's (and § 105(a)'s) express *exclusion* from compensation ("disability [that] is a result of the veteran's own ... abuse of alcohol or drugs.").

In situation number 2, the language of § 1110 also precludes compensation for a disability (such as cirrhosis of the liver) arising as a secondary result of primary alcohol abuse for two reasons. First, such a disability does not satisfy § 1110's words of authorization. Section 1110 only allows compensation for disabilities resulting from injuries suffered or diseases contracted "in line of duty." A disability, such as cirrhosis, necessarily results from a primary alcohol abuse disability, and § 105(a)

explicitly precludes a primary alcohol abuse disability from being considered "in line of duty." Second, like the primary alcohol abuse disability, a secondary disability arising from a primary alcohol disability is not compensable, because it fits within the words of § 1110's exclusion, as it too is a "result of the veteran's own ... abuse of alcohol or drugs [i.e., primary alcoholism acquired in service]."

█ Allen's alleged disability, situation number 3, is quite different from one in which the veteran consumes alcohol willfully (causing a primary alcohol abuse disability) or one where a veteran later develops a disability as a result of the willful consumption of an alcoholic beverage (i.e., a secondary disability arising from a primary alcohol abuse disability). In contrast to these two other situations, an alcohol abuse disability arising as a direct result of a psychiatric condition fits within § 1110's words of authorization for compensation ("[f]or disability *resulting from* ... disease [PTSD] contracted in line of duty" (emphasis added)), and does *not* fit within § 1110's express exclusion from compensation ("[a] disability [that] is a result of the veteran's own ... abuse of alcohol or drugs."). In this case, according to the opinion of one VA doctor, Allen's alcohol abuse disability resulted from PTSD, i.e., a "disease contracted in line of duty." If so, his disability *cannot* result at the same time from an "abuse of alcohol or drugs." Therefore, if, on remand, the VA finds that Allen's alcohol abuse is in fact a *disability resulting from* a disease contracted in the line of duty (PTSD), then it cannot be found to be a *disability resulting from* alcohol or drug abuse. The two categories of causation are mutually exclusive. This is clear from the terms of both § 1110 and § 105(a), each of which in the very same words—"a result of"—distinguishes essentially between willful and involuntary causative acts. If the phrase "disability resulting from" as a key to determining a disability's cause is intended one way for purposes of authorization for

compensation, it would be incongruous for Congress to have meant for it to be defined inconsistently for purposes of the VA determining whether the disability fits within the express exclusion from compensation.

We would stress that the language of § 1110 seems to *only* permit compensation in the third situation, where there is indeed a causal relationship between a service-connected disability, such as PTSD, and an alcohol or drug abuse disability. It is up to the VA to determine how to assess whether an alcohol or drug abuse disability is actually caused by a service-connected disability. The fact that a veteran both has PTSD and an alcohol or drug abuse disability does not mean that the veteran can always use the alcohol or drug abuse disability to increase his or her rating by establishing secondary service-connection for the alcohol or drug abuse disability or by using the alcohol or drug abuse disability to show the increased severity of a service-connected disorder. Even if a veteran has PTSD, or some other service-connected disorder, the VA could conclude that the alcohol or drug abuse disability was due to willful action, and did not result from the service-connected disorder. If this is the case, we would not be able to review that factual determination, and the VA's conclusion would stand. The language of § 1110 only seems to permit compensation in the limited case where an alcohol or drug abuse disability "results from" a disease contracted in the line of duty; § 1110 precludes compensation in all other cases where the VA determines that the alcohol or drug abuse disability is "a result of the veteran's own ... abuse of alcohol or drugs."

## I. VA Interpretation of "Willful Misconduct" and Legislative History of § 1110

The VA's past interpretation of "willful misconduct" as well as the limited legislative history of §§ 105 and 1110, support, at least inferentially, our interpretation that in defining the disability for purpose of the exclusion, Congress intended an element of scienter, so as to distinguish between willful and involuntary causative acts. Prior to the addition of the phrase "or abuse of alcohol or drugs," the statute (§ 310) merely disallowed compensation for acts of "willful misconduct." VA regulations defined willful misconduct:

> "Willful misconduct" means an act involving conscious wrongdoing or known prohibited action.
>
> I. It involves deliberate and intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences.
>
> II. Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct.
>
> III. Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death.

38 C.F.R. § 3.1(n) (1990); *see also* 38 C.F.R. § 3.302 (1990) ("A person of unsound mind is incapable of forming an intent (mens rea or *guilty mind*, which is an *essential* element of ... willful misconduct)) (emphasis added). In interpreting the phrase, the VA construed the term "willful misconduct" to refer to an act of conscious wrongdoing, involving elements of intent and voluntariness. *See* 52 O.G.C. Prec. Op. 215, 216 (May 23, 1928) (applying a definition of "willful misconduct" as referring to "an act proceeding from a will; done of a purpose; "impl[ying] not only a knowledge of a thing, but a determination with a bad intent to do it or to omit doing it."); 66 O.G.C. Prec. Op. 270, 272 (Feb. 26, 1931) (finding of willful misconduct requires "something in the nature of conscious wrongdoing, that is, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."). The VA incorporated this definition of "willful misconduct" into VA regulations in 1948 (former 38 C.F.R. § 3.65(c) (1948) (defining "willful misconduct" as being " 'malum in se' or 'malum prohibitum' if involving

conscious wrongdoing or known prohibited action.")).

Consistent with this definition of "willful misconduct," the VA established that only primary alcohol or drug abuse unrelated to an underlying psychiatric disorder could be considered "willful misconduct." Alcoholism "secondary to and a manifestation of an acquired psychiatric disorder" was not characterized as "willful misconduct." Administrator's Decision, Veterans' Administration No. 988, Interpretation of the Term "Willful Misconduct" as Related to the Residuals of Chronic Alcoholism, Aug. 13, 1964, App. 142–43 ("In misconduct determinations, however, with respect to mental disorders where the use of alcohol as a beverage has been involved, a *distinction has heretofore been recognized* between alcoholism as a primary condition (or as secondary to an underlying personality disorder), and alcoholism as secondary to and a manifestation of an acquired psychiatric disorder. If the latter condition is found the resulting disability or death is not to be considered as willful misconduct.") (emphasis added); *see also Traynor v. Turnage,* 485 U.S. 535, 545, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) ("The Veterans' Administration had long construed the term 'willful misconduct' for purposes of ... [§ 310] as encompassing primary alcoholism (i.e., alcoholism that is *not* 'secondary to and a manifestation of an acquired psychiatric disorder.')" (emphasis added)). Those veterans, moreover, who were compensable as primarily alcohol or drug dependent could also receive compensation for the secondary results of alcohol or drug abuse that was service-connected. 38 C.F.R. § 3.301 (1989) stated:

> The simple drinking of alcoholic beverages is not of itself willful misconduct.... If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct. Organic diseases and disabilities which are a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin.

And even those veterans who were not compensable for alcohol abuse as a primary disability could recover for residuals. The VA intended this regulation to incorporate the principles of the 1964 Administrator's Decision. *See Traynor,* 485 U.S. at 538, 108 S.Ct. 1372 37 Fed.Reg. 20,335, 20,336 (1972) (proposed regulation); 37 Fed.Reg. 24,662 (1972) (final regulation). Thus, prior to the 1990 amendments, a veteran suffering from a disease such as cirrhosis of the liver which resulted from primary alcohol abuse could still receive compensation for his cirrhosis condition, even though he could not receive compensation for the willful alcohol abuse disability itself. Since the regulation equated primary alcohol abuse with willful misconduct, a veteran could not recover for a primary alcohol abuse disability.

The legislative history of the 1990 amendments reveals that in adding the phrase "or abuse of alcohol or drugs," Congress intended only to narrowly change the statute for the specific purpose of precluding compensation as previously allowed by 38 C.F.R. § 3.301. We see no indication in the legislative history that Congress intended to preclude compensation for an alcohol abuse disability resulting from a non-willful service-connected disorder, or for that matter, to erase the distinction between willful and involuntary acts. Congress only intended to clarify the terms of causation to preclude any compensation for "a disability [that] is a result of" willful alcohol or drug abuse. The House Conference Report recognized that the VA had specifically differentiated between the primary and secondary effects of willful misconduct. The Report began by noting that under current law, "direct, or *primary,* effects of willful misconduct are not considered to have been incurred or aggravated in the line of duty." H.R.Rep. No. 101–964, at 996 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2374, 2701

(emphasis added). The Report also noted that as of 1990, under 38 C.F.R. § 3.301, disabilities that were the secondary result of in-service actions constituting willful misconduct (i.e., primary alcoholism) were considered service-connected. *Id.* Congress specifically stated the purpose of the amendments was to eliminate the distinct and different rules pertaining to compensation for direct effects of willful misconduct and the secondary effects of willful misconduct. The Report states:

> Section 11052 would 1) amend section 105(a) of title 38 to repeal the prohibition against VA presuming that venereal disease resulted from willful misconduct; and 2) amend sections 105(a), 310, 331, and 521 of title 38 *to preclude payment of compensation or pension for the secondary effects of willful misconduct* [i.e., cirrhosis of the liver].... Section 11052 would provide that injuries or diseases incurred *during service* as a result of willful misconduct or the abuse of alcohol or drugs will not be considered incurred in the line of duty and thus not be compensated by VA as a service-connected disability.

H.R.Rep. No. 101–964, at 997, *reprinted in* 1990 U.S.C.C.A.N. 2374, 2702 (emphasis added); *see also* H.R.Rep. No. 101–881, at 223 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2227 ("Under current law payment of compensation ... is barred if the disability suffered by the veteran resulted from the veteran's willful misconduct. The DVA has held that the secondary effects of willful misconduct could not have been considered to have been willed by the veteran, and therefore, disabilities secondary to the misconduct are compensable. [The statute] would amend [§ 310] to preclude payments of compensation or pension for *misconduct* disabilities, including their secondary effects.") (emphasis added); 136 Cong. Rec. S15,722 (daily ed. Oct. 18, 1990) ("[U]nder VA regulations [38 C.F.R. § 3.301], organic diseases and disabilities which are a secondary result of the chronic use of alcohol or of drugs are not considered to be caused by willful mis-

conduct. The Committee legislation is designed to change that result.").

Statements in the Congressional Record are also instructive in supporting an interpretation of § 1110 as referring only to secondary effects of willful misconduct. Secretary of Veterans Affairs Edward Derwinski submitted a briefing paper in response to an October 9, 1990 letter from Senator Alan Cranston, Chairman of the Senate Committee on Veterans' Affairs, "regarding [a] proposal to eliminate disability compensation benefits for conditions that constitute secondary effects of willful misconduct." 136 Cong. Rec. S15,-544 (daily ed. Oct. 17, 1990). The paper stated that "[i]t has been proposed to amend the section of the law dealing with willful misconduct to specify that disability secondary to willful misconduct may not be the basis for a grant of service[-]connection. This proposed change would make inapplicable [a] 1965 Administrator's decision [which "made a distinction between disabilities which are the primary result of drinking (for example, automobile accidents) and the remote, organic, secondary effects (for example, liver disease)"]." *Id.* This language indicates that the statute was to be amended for the purpose of precluding compensation for the secondary effects of willful misconduct, i.e., primary alcohol abuse. There is no indication that the statute was amended to preclude compensation for disabilities arising secondarily from disabilities that were of themselves not willful misconduct.

The 1990 amendments were also *not* designed to change the agency's application of 38 C.F.R. § 3.310(a). That section is not mentioned in the legislative history as the object of the intended changes, whereas 38 C.F.R. § 3.301 was specifically mentioned. Prior to the 1990 amendments, alcohol or drug abuse secondary to a service-connected disorder, such as PTSD, was evaluated under 38 C.F.R. § 3.310(a) as "part of" the veteran's PTSD disorder. On March 1, 1994, in response to the 1990 amendments, the VA published

a proposal in the Federal Register (59 Fed.Reg. 9719) to amend 38 C.F.R. § 3.301(a). *See* 60 Fed.Reg. 27,407 (May 24, 1995). One commentator in the Federal Registrar noted that the Veterans Benefit Administration Manual M 21–1 and VBA Circular 21–90–12 provided that alcohol or drug abuse disabilities are considered service-connected if the alcohol or drug abuse is a manifestation of another service-connected disability, such as PTSD. *Id.* The commentator recommended that 38 C.F.R. § 3.301 be amended to specifically state that rule. In the commentary accompanying the Final Rule amending 38 C.F.R. § 3.301, the VA in response, said that:

> The manual and circular provisions which the commentator cited are examples of the application of 38 C.F.R. § 3.310(a), which provides that disability that is proximately due to or the result of a service-connected disease or injury shall be service-connected and that when service connection is thus established for a secondary condition the secondary condition shall be considered a part of the original condition. In circumstances such as those raised by the commenter, *VA is required by § 3.310(a) to consider conditions that it has determined are secondary to a service-connected condition to be part of that service-connected condition rather than a result of the abuse of alcohol or drugs. Since that requirement is established elsewhere in VA's regulations, it is unnecessary to incorporate those provisions into § 3.301.*

*Id.* (emphasis added).

We cannot broaden the prohibition in § 1110 to include secondary disabilities arising from a non-willful, service-connected disease. *See, e.g., Boyer v. West,* 210 F.3d 1351, 1356 (Fed.Cir.2000) ("This court can only interpret the statutes that are enacted by Congress.... We are simply powerless to amend any statutory provision sua sponte."). There is nothing in the legislative history evidencing congressional intent to override the VA's application of 38 C.F.R. § 3.310(a), or to bar compensa-

tion for veterans suffering from alcohol or drug abuse resulting secondarily from a service-connected disorder, such as PTSD. Indeed, the legislative history is quite clear that Congress intended to only preclude recovery for a primary alcohol abuse disability or the secondary effects of a primary alcohol abuse disability. If Congress intended § 1110 to alter the existing agency practice under 38 C.F.R. § 3.310(a) of defining secondary disabilities as part of the original disability even when the secondary disability involves an alcohol or drug disability, it would have said so explicitly.

### Conclusion

We therefore conclude, based on the language of the statute and the pertinent legislative history, that 38 U.S.C. § 1110 does not preclude compensation for an alcohol or drug abuse disability secondary to a service-connected disability or use of an alcohol or drug abuse disability as evidence of the increased severity of a service-connected disability. We would stress that the holding of the case is quite limited. Veterans can only recover if they can adequately establish that their alcohol or drug abuse disability is secondary to or is caused by their primary service-connected disorder. We foresee that such compensation would only result where there is clear medical evidence establishing that the alcohol or drug abuse disability is indeed caused by a veteran's primary service-connected disability, and where the alcohol or drug abuse disability is not due to willful wrongdoing.

On remand, the Board will have to determine whether Allen's alcohol abuse disability is secondary to his PTSD, or whether it demonstrates the increased severity of his PTSD disability. If it finds sufficient evidence demonstrating a causal connection, Allen could be entitled to an increase in his schedular rating. But if the Board finds that Allen's alcohol abuse is willful and did not result from his PTSD, Allen could not receive additional compensation for a willful alcohol abuse disability. *Barela* and any other decisions of the Vet-

erans Court are hereby overruled, to the extent they are contrary to this opinion.

For the foregoing reasons, the decision of the Veterans Court is affirmed-in-part and reversed-in-part. The case is remanded to the Veterans Court for further proceedings consistent with this opinion.

AFFIRMED–IN–PART, REVERSED– IN–PART, AND REMANDED