Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-7242

ROBERT L. CARLSON,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Y. Ken Lee, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Alan G. Lance, Sr.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-7242

ROBERT L. CARLSON,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  March 27, 2007

_____

Before LOURIE, BRYSON, and DYK, Circuit Judges.

PER CURIAM.

Robert L. Carlson appeals from a decision of the Court of Appeals for Veterans Claims, No. 04-0399, that affirmed a decision by the Board of Veterans' Appeals denying Mr. Carlson's claim of service connection for a psychiatric disorder.  We affirm.

I

A veteran is entitled to receive compensation for personal injury or disease if the condition was incurred or aggravated in the line of duty and was not the result of the veteran's own willful misconduct or abuse of alcohol or drugs.  38 U.S.C. § 1110; Shedden v. Principi, 381 F.3d 1163, 1166 (Fed. Cir. 2004).  An injury or disease is deemed to have been incurred in the line of duty if the veteran was on active duty at the

time the injury was suffered or the disease contracted, "unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs." 38 U.S.C. § 105. The Department of Veterans Affairs ("DVA") has issued regulations interpreting the "line of duty" requirement. Those regulations include 38 C.F.R. §§ 3.1(m) and 3.1(n). Section 3.1(m) provides as follows:

> <u>In line of duty</u> means an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct or, for claims filed after October 31, 1990, was a result of his or her abuse of alcohol or drugs. A service department finding that injury, disease or death occurred in line of duty will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs.

Section 3.1(n) defines willful misconduct as "an act involving conscious wrongdoing or known prohibited action." It states that a "service department finding that injury, disease or death was not due to misconduct will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the facts and the requirements of laws administered by the Department of Veterans Affairs." Thus, sections 3.1(m) and 3.1(n) make clear that a finding by the service department that there was no willful misconduct by the veteran and that the veteran's condition was incurred in the line of duty is generally binding on the DVA.

The alcohol and drug abuse prohibitions in sections 1110 and 105 were added as part of the Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 8052, 104 Stat. 1388, 1388-351. Before that time, DVA regulations prohibited a veteran from successfully claiming service connection for the direct, primary effects of willful misconduct, which included chronic use of alcohol or drug abuse. Under those regulations, however, a veteran's condition was eligible for service connection when the

condition was a secondary result of willful misconduct. 38 C.F.R. § 3.301(b)(2), (b)(3) (1989); Allen v. Principi, 237 F.3d 1368, 1379-80 (Fed. Cir. 2001) (citing H.R. Rep. No. 101-964, at 996-97 (1990), reprinted in 1990 U.S.C.C.A.N. 2374, 2701-02). For example, while alcoholism was not a compensable disease, cirrhosis of the liver resulting from alcohol abuse could be a service-connected condition. By adding the phrase "or abuse of alcohol or drugs" to the statutory references to willful misconduct, Congress modified that framework to preclude compensation for the secondary effects of drug or alcohol abuse. Allen, 237 F.3d at 1379-80.

The statutory changes, however, did not affect the prior practice of allowing service connection for a disability that is secondary to a service-connected disease or injury. 38 C.F.R. § 3.310(a); Allen, 237 F.3d at 1381; 60 Fed. Reg. 27407, 27408 (May 24, 1995). Thus, when a veteran's alcohol or drug abuse is caused by another service-connected disability, such as post-traumatic stress disorder, the alcohol or drug abuse can be service connected. Allen, 237 F.3d at 1381.

II

Mr. Carlson served on active duty with the United States Army from June 1967 to September 1971. In January 1971, while in Vietnam, he was admitted to an Army hospital for exhibiting, among other things, paranoid delusions. Upon examination, he stated that he had taken LSD, opium, marijuana, and amphetamines in the recent past. He was diagnosed with amphetamine abuse and a schizophrenic reaction. The medical records note that his condition was incurred in the line of duty. Further examination at a hospital in Japan concurred in the original diagnosis.

Several months later, Mr. Carlson was examined again and was diagnosed with heroin abuse and latent schizophrenia. That diagnosis resulted in a recommendation that he be administratively separated from service. Shortly thereafter, an Army psychiatrist performed another examination and concluded that Mr. Carlson suffered primarily from schizophrenia. The psychiatrist concluded that his drug use was an abortive attempt to self-medicate.

Mr. Carlson's separation examination in August 1971 resulted in a diagnosis of schizophrenia in partial remission. The report of that examination said nothing about drug use. Both the separation examination and a later review of Mr. Carlson's "mental disorder and drug abuse" stated that Mr. Carlson incurred his condition in the line of duty.

Following his separation from the Army, Mr. Carlson was examined by both DVA and private physicians. Some concluded that he had an organic brain disorder, and others concluded that he was simply addicted to drugs. In 1993, after receiving a private diagnosis of paranoid schizophrenia and psychoactive drug abuse, Mr. Carlson filed a claim seeking service connection for an acquired psychiatric disorder. In conjunction with evaluating that claim, the Board of Veterans' Appeals obtained two evaluations from DVA physicians in 1999 and 2000. Both examinations concluded that it was most likely the case that since 1971 Mr. Carlson had been suffering from an addiction to drugs resulting in psychotic reactions, and that he was not suffering from any primary psychiatric disorder.

The Board of Veterans' Appeals credited the DVA examination reports and found that Mr. Carlson's condition was the result of voluntary drug abuse. The Board

recognized that 38 C.F.R. § 3.1(m) would normally require the DVA to abide by the Army's line-of-duty determination. However, the Board noted that the regulation provided an exception for cases in which the service department's finding is "patently inconsistent with the requirements of laws administered by" the DVA. The Board found that granting service connection for a condition caused by voluntary drug abuse is patently inconsistent with the requirements of 38 U.S.C. § 105, which bars compensation for conditions that result from voluntary drug abuse. The Court of Appeals for Veterans Claims affirmed the Board's decision, and Mr. Carlson appealed to this court.

III

On appeal, Mr. Carlson takes issue with the Board's consideration of post-service medical records to determine whether the Army's line-of-duty determination was "patently inconsistent" with laws administered by the DVA. In essence, he argues that allowing the DVA to consider those post-service records undermines the purpose of the regulation by failing to give binding effect to the service department's determination. Mr. Carlson argues that if the DVA can decide, based on new information, whether it believes the service department's finding is patently inconsistent with laws administered by the DVA, the DVA is simply determining for itself whether the veteran's condition is service connected.[1]

---

[1] For purposes of determining if the DVA is bound by the Army's determination regarding willful misconduct, section 3.1(n) of the DVA regulation would appear to be more directly applicable than section 3.1(m). While section 3.1(m) addresses the general effect of a "line of duty" finding, section 3.1(n) specifically addresses the willful misconduct component that determination. Thus, section 3.1(n) would seem to address whether the DVA is required to defer to a service department's

The problem with Mr. Carlson's argument as it applies to this case is that the Army's 1971 line-of-duty determination was based on standards that are materially different from those that apply to claims filed after 1990. When evaluating Mr. Carlson's injury in 1971, the Army could have concluded that his condition was service connected on either of two grounds: It could have found that his drug abuse was a secondary result of his becoming schizophrenic, or it could have found that his drug abuse precipitated his schizophrenia. Because those are the only two possibilities for which there was any evidence, and because both would have resulted in a line-of-duty determination under the statutes and regulations in effect at that time, the Army did not have to decide between them. Now that Congress has eliminated service connection for cases falling into the second of those two categories, however, the distinction has become important. Because the Army did not determine that Mr. Carlson's drug abuse was a secondary result of his contracting a mental disease, the Army's line-of-duty determination does not resolve the issue of service connection. The DVA therefore needed to make its own determination as to the role of voluntary drug abuse in Mr. Carlson's case when evaluating his claim. Because section 3.1(m) did not bar the DVA from making a determination of no service connection, the decision of the Board of Veterans' Appeals was not legally erroneous on that ground. Accordingly, we uphold the decision of the Court of Appeals for Veterans Claims sustaining the Board's ruling.

---

determination regarding a veteran's drug abuse. In light of the rationale of our decision in this case, however, it is not necessary for us to decide which subsection governs the line-of-duty inquiry here.