Citation Nr: 1617329 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 10-31 762A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include depression, anxiety, adjustment disorder, and posttraumatic stress disorder (PTSD), to include as secondary to her service-connected gastroesophageal reflux disease (GERD).


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Shauna M. Watkins, Counsel



INTRODUCTION

The Veteran served on active duty from March 1998 to October 2000.

The Veteran's claim comes before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision of the U.S. Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky, which denied the benefit sought on appeal. The Veteran filed a Notice of Disagreement (NOD) in September 2009. The RO issued a Statement of the Case (SOC) in July 2010. In August 2010, the Veteran filed her Substantive Appeal. Thus, the Veteran perfected a timely appeal of this issue.

The RO in Nashville, Tennessee, currently has jurisdiction over this appeal.

In November 2010, the Veteran requested a hearing before a Decision Review Officer (DRO) of the RO. In a March 2012 letter, she was notified that the hearing had been scheduled for March 2012. However, the Veteran failed to appear for the proceeding and has not provided an explanation for her absence or requested to reschedule the hearing. Accordingly, the Board considers that her hearing request to be withdrawn. 

In March 2014, the Board recharacterized the issue as an acquired psychiatric disorder, to include PTSD, adjustment disorder, depression, and anxiety. See Clemons v. Shinseki, 23 Vet. App. 1 (2009). The Board then remanded this appeal in March 2014 and September 2015 to the RO via the Appeals Management Center (AMC), in Washington, DC, for further development. The appeal has now been returned to the Board for appellate disposition. 

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record, in addition to the Veteran's Virtual VA paperless claims file.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The Veteran's current acquired psychiatric disorder was not manifested during her active military service, is not shown to be causally or etiologically related to her active military service, is not shown to have manifested within one year from the date of her separation from the military, and is not shown to be caused or aggravated by the service-connected GERD.


CONCLUSION OF LAW

Service connection for acquired psychiatric disorder, to include depression, anxiety, adjustment disorder, and PTSD, to include as secondary to her service-connected GERD, is not established. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the veteran). 
I. VA's Duties to Notify and Assist

Under applicable law, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record: (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and, (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the Agency of Original Jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The Board finds that the content requirements of a duty-to-assist notice letter have been fully satisfied. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). A letter from the AOJ dated in April 2009 provided the Veteran with an explanation of the type of evidence necessary to substantiate her claim, as well as an explanation of what evidence was to be provided by her and what evidence the VA would attempt to obtain on her behalf. The letter also provided the Veteran with information concerning the evaluation and effective date that could be assigned should service connection be granted, pursuant to Dingess v. Nicholson, 19 Vet. App. 473 (2006). The letter was provided prior to the initial AOJ adjudication of her claim. Accordingly, VA has no outstanding duty to inform the Veteran that any additional information or evidence is needed.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Here, the Board finds that all relevant facts have been properly developed, and that all evidence necessary for equitable resolution of the issue has been obtained. Her STRs, personnel records, VA Compensated Work Therapy Program (CWT)/Homeless Veteran Supported Employment Program (HVSEP) records, criminal history records, and post-service treatment records have been obtained. The claims file does not present evidence that the Veteran is currently receiving disability benefits from the Social Security Administration (SSA) for the disorder currently on appeal. Therefore, the Board does not need to make an attempt to obtain these records. The Board does not have notice of any additional relevant evidence that is available but has not been obtained. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on a claim, as defined by law. The record indicates that the Veteran participated in a VA examination in May 2014, the results of which have been included in the claims file for review. The examination involved a review of the claims file, a thorough examination of the Veteran, and an opinion that was supported by sufficient rationale. The Veteran was also provided VA addendum medical opinions in April 2015 and October 2015, which were conducted by the May 2014 VA examiner and which involved another review of the claims file and opinions that were supported by sufficient rationale. Therefore, the Board finds that the VA examination and medical opinions are adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Given the foregoing, the Board finds that the VA has substantially complied with the duty to obtain the requisite medical information necessary to make a decision on the Veteran's claim.

The Board is also satisfied as to substantial compliance with its March 2014 and September 2015 remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). The remands included scheduling the Veteran for a VA examination and medical opinion, which she had in May 2014, April 2015, and October 2015. The remands also included obtaining the Veteran's recent VA Medical Center (VAMC) treatment records, CWT/HVSEP records, post-service criminal records, and personnel records, to include the Veteran's Article 15 proceedings. All of these were obtained and associated with the claims file. Finally, the remands included readjudicating the claim, which was accomplished in the May 2015 and December 2015 Supplemental SOCs (SSOCs). Thus, the Board finds that there has been substantial compliance with its remand directives. Id.

For the foregoing reasons, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claim. Therefore, no further assistance to the Veteran with the development of evidence is required.

II. Service Connection

The Veteran seeks service connection for an acquired psychiatric disorder, to include depression, anxiety, adjustment disorder, and PTSD, to include as secondary to her service-connected GERD.

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a).

Service connection for PTSD, in particular, requires: medical evidence diagnosing the disorder in accordance with 38 C.F.R. § 4.125(a) (2015); a link, established by medical evidence, between current symptoms and an in-service stressor; and, credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f) and 38 C.F.R. § 4.125 (requiring PTSD diagnoses to conform to the criteria in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM)).

Service connection may also be granted for any disease diagnosed after the military discharge, when all the evidence, including that pertinent to the period of military service, establishes that the disease was incurred during the active military service. 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d). 
Service connection for certain chronic diseases, including psychoses, will be presumed if they manifest to a compensable degree within one year following the active military service. This presumption, however, is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d). 

For the showing of a chronic disease in service, there must be a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. If chronicity in service is not established, evidence of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In order to prevail under a theory of secondary service connection, there must be: (1) evidence of a current disorder; (2) evidence of a service-connected disability; and, (3) medical nexus evidence establishing a connection between the service-connected disability and the current disorder. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

In addition, the regulations provide that service connection is warranted for a disorder that is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. Any additional impairment of earning capacity resulting from an already service-connected disability, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected disability, should also be compensated. Allen v. Brown, 7 Vet. App. 439 (1995). When service connection is thus established for a secondary disorder, the secondary disorder shall be considered a part of the original disability. Id.
The Board notes that 38 C.F.R. § 3.310 was amended, effective October 10, 2006. Under the revised § 3.310(b) (the existing provision at 38 C.F.R. § 3.310(b) was moved to sub-section (c)), any increase in severity of a non-service-connected disease or injury proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the disease, will be service-connected. In reaching this determination as to aggravation of a non-service-connected disorder, consideration is required as to what the competent evidence establishes as the baseline level of severity of the non-service-connected disease or injury (prior to the onset of aggravation by service-connected disability), in comparison to the medical evidence establishing the current level of severity of the non-service-connected disease or injury. These findings as to baseline and current levels of severity are to be based upon application of the corresponding criteria under the Schedule for Rating Disabilities (38 C.F.R. part 4) for evaluating that particular non-service-connected disorder. See 71 Fed. Reg. 52,744-47 (Sept. 7, 2006).

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C.A. § 7104(a) (West 2014); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303(a). 

When there is an approximate balance of positive and negative evidence regarding a material issue, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); see 38 C.F.R. § 3.102. If the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365. 

The Board will begin by addressing direct service connection.

As noted above, the first element of direct service connection requires medical evidence of a current disorder. Here, a current diagnosis has been established. The Veteran was afforded a VA examination in May 2014, and was diagnosed with other specified anxiety disorder. The Veteran also has diagnoses of depression, anxiety, and adjustment disorder in the recent VA treatment records. See September 2009 and May 2010 VA treatment records. The May 2014 VA examination determined that the Veteran does not have a current clinical diagnosis of PTSD under the DSM, and the remaining treatment records do not document a diagnosis of PTSD under the DSM. 38 C.F.R. § 3.304(f). Nonetheless, the Veteran has current psychiatric diagnoses and has satisfied the first element of service connection.

As stated above, the second element of direct service connection requires medical evidence, or in certain circumstances, lay testimony, of in-service incurrence or aggravation of an injury or disease. 

Regarding an in-service incurrence, the Veteran asserts that she experienced pressure and stress during her active military service, which was evidenced by her behavioral changes in service, and which eventually led to her current acquired psychiatric disorder diagnosis. The Veteran also submitted a September 2009 statement from a fellow solider, in which the solider describes the Veteran's problems "adjusting to the rigorous structure of military life." The solider reported that the Veteran "continued to drink and smoke as she struggled to cope with military weight standards and failure of skill knowledge tests, [which] led to more aggressive behavior, which ultimately resulted in a physical altercation" and subsequent in-service arrest. The Veteran's personnel records document that she underwent an Article 15 proceeding for being drunk and disorderly during her active military service. Her DD-214 Form documents that she was administratively discharged early for unsatisfactory performance. The Veteran received an honorable military discharge.

The Veteran's STRs are silent for documentation of the disorder. The records reveal no complaints or treatment related to the Veteran's acquired psychiatric disorder. The Veteran's active military service ended in October 2000. 

Two months after her discharge, the evidence shows that the Veteran was detained/arrested for trespassing in December 2000. The Veteran also submitted her post-service criminal records. However, the first post-service relevant complaint of a psychiatric disorder was not until October 2008, when the Veteran was treated for stress by the VA Medical Center (VAMC). In December 2008, the Veteran sought mental health treatment from the VAMC, and was diagnosed with adjustment disorder with anxiety. The December 2008 VAMC treatment record notes that the Veteran was seen briefly by the VAMC a few years ago, but did not follow through with her mental health treatment. At the 2008 visits, the Veteran did not report that her acquired psychiatric disorder had been present since her active military service. The VA examiner found that the Veteran's first post-service mental health treatment was in 2005, which is consistent with the 2008 treatment record that documented mental health treatment a few years prior. Again, the Veteran's active duty ended in 2000. This period without treatment for the disorder weighs against the claim. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000) (holding that service incurrence may be rebutted by the absence of medical treatment of the claimed disorder for many years after the military discharge). 

As previously mentioned, the third element of direct service connection requires medical evidence of a nexus between the current disorder and the in-service disease or injury. Here, the only medical nexus opinions of record are negative. 

Specifically, on VA examination in May 2014, following a review of the claims file and a physical examination of the Veteran, the VA examiner determined that the Veteran's current acquired psychiatric disorder was less likely than not (less than 50 percent probability) incurred in or caused by her active military service. The examiner reasoned that there was no documentation in the Veteran's STRs of treatment for anxiety or other mental health complaints. There was no documentation of any mental health treatment until 2005 through the VA. The examiner noted that the Veteran did not have a PTSD diagnosis, which is trauma-based. The examiner continued by stating that, according to the DSM, there was no mention of a link between the onset of a generalized anxiety disorder and experiencing a trauma. In fact, "many individuals with generalized anxiety disorder report they have felt anxious and nervous all of their lives." Thus, because there was no evidence of mental health treatment in the service and because the Veteran's diagnosis was not trauma-based, the examiner opined that the Veteran's current illness could not be linked to her military service.

The May 2014 VA examiner also determined that it was less likely than not that the Veteran's current acquired psychiatric disorder was permanently worsened beyond it normal progression, as there was no evidence of a mental health diagnosis in or prior to the military or due to the Veteran's stressor. The examiner noted that the Veteran did have many problems in the service, but found that this was just as likely as not due to her self-reported alcohol abuse rather than an unverified non substance-based psychiatric disorder. The Veteran reported that she abused alcohol in the military to deal with her distress. The examiner stated that this implied "self-medication" with alcohol to treat distress. As shown through a review of relevant literature, the examiner reported that Lembke (2012) states "a therapeutic effect of
substance use ... is not supported by the evidence." In fact, substance use usually worsens and/or creates symptoms and further distress. See Lembke, A. (2012). Time to Abandon the Self-Medication Hypothesis in Patients with Psychiatric Disorders. The American Journal of Drug and Alcohol Abuse, 38(6): 524-529. The examiner added that there was not documentation of mental health treatment by the Veteran until 2005 at the VA.

A VA addendum medical opinion was obtained in April 2015. Following another review of the claims file, to include the Veteran's personnel records and Article 15 discharge, the May 2014 VA examiner concluded that the Veteran's acquired psychiatric disorder was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. The examiner reasoned that the Veteran was diagnosed with a sub-threshold Generalized Anxiety Disorder, diagnosed as Other Specified Anxiety Disorder. The symptoms that led to this Veteran's diagnosis included worrying about everything, and transient sleep disturbance due to worry, restlessness, irritability, and difficulty concentrating. The examiner stated that the Veteran's in-service behaviors do not relate to the symptoms of an anxiety disorder. The examiner noted that the Veteran being reduced in grade in service for being drunk and disorderly was pointed to as a possible salient piece of information. However, the examiner indicated that this behavior, along with the others listed, was more likely directly related to the Veteran's alcohol use rather than signs of a budding anxiety disorder. Additionally, the examiner added that the Veteran identified at the VA examination that her drinking "started as partying and having fun but got to the point where she felt like
she needed it to function for the day." The examiner stated that this was suggestive of an Alcohol Use Disorder, for which the Veteran was reportedly treated for during the military. The examiner again cited to the medical literature as support for her medical opinion. See Lembke, A. (2012). Time to Abandon the Self-Medication Hypothesis in Patients with Psychiatric Disorders. The American Journal of Drug and Alcohol Abuse, 38(6): 524-529.

The VA examiner clearly reviewed the STRs and other evidence in the claims folder, in addition to the current medical literature. The examiner provided medical opinions that are supported by and consistent with the evidence of record. The examiner gave an alternative theory to address the etiology of the current acquired psychiatric disorder - namely, the Veteran's alcohol abuse. There is no positive evidence to the contrary of these medical opinions in the claims file. The treatment records do not provide contrary evidence. For all of these reasons, service connection is not warranted on a direct basis.

The Veteran reports continuous symptomatology since her active military service. However, the Veteran's contentions are not supported by the medical evidence of record. As stated above, the first post-service mental health treatment was in 2005, five years after the Veteran's military separation in 2000. Further, the STRs do not show that the Veteran developed chronic psychoses during her active military service. The STRs do not document any complaints of or treatment for psychoses. When the Veteran was first treated post-service, she did not indicate that her psychiatric symptoms had been present since her active military service. The evidence of record does not document continuity of symptomatology during and since the Veteran's active military service. Thus, the Board finds that the medical evidence does not establish a "chronic disorder." 38 C.F.R. § 3.303; see Walker, 708 F.3d at 1331. The Veteran's service connection claim cannot be granted on this theory of entitlement.
Additionally, the Board finds that the Veteran is not entitled to presumptive service connection for psychoses. As stated above, the first post-service mental health treatment was in 2005, and the Veteran was separated from the active duty in 2000. No psychoses diagnosis was made within one year of the Veteran's military discharge. Thus, the presumption for service connection for chronic diseases does not apply. 38 U.S.C.A. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a), 3.309(a).

The Veteran also seeks service connection for an acquired psychiatric disorder, as secondary to her already service-connected GERD.

As noted above, the first element of secondary service connection requires evidence of a current disorder, and this element has been satisfied.

As stated above, the second element of secondary service connection requires evidence of a service-connected disability. Here, the Veteran is currently service-connected for GERD. Thus, the Veteran has satisfied the second element of secondary service connection.
 
As previously mentioned, the third element of secondary service connection requires medical nexus evidence establishing a connection between the service-connected disability and the current disorder. Here, the only nexus opinions of record on the issue of secondary service connection are negative. 

Specifically, on VA examination in May 2014, following a review of the claims file and a physical examination of the Veteran, the VA examiner determined that it was less likely than not that the Veteran's current acquired psychiatric disorder was caused by her service-connected GERD, as no scholarly research was found showing a link in this direction. The examiner stated that it was entirely possible that the Veteran's alcohol abuse led to her GERD. However, the examiner stated that there was no documentation of substance treatment found in the Veteran's claims file to help the examiner analyze causal factors between stress and substance use; instead, there was only the veteran's retrospective self-report in the claims file. The examiner stated that research indicates that retrospective self-report often falsely connects stressful situations as being instigators of substance problems. See Morrissey, ER & Schuckit, MA (1978), Stressful life events and alcohol problems among women seen at detoxication center. Journal of Studies on Alcohol, 39:1559-1576. According to the Veteran's stressor statements, the examiner indicated that it appears that the Veteran was trying to make the argument that her anxiety led to her drinking which led to her GERD. While this is theoretically possible, the examiner opined that there was not enough evidence beyond the Veteran's self-report to establish the presence of an anxiety disorder prior to GERD. The examiner reported that a review of the medical literature produced no results to suggest that GERD, itself, was a cause of general anxiety.

A VA addendum medical opinion was obtained in October 2015. Following another review of the claims file, the May 2014 VA examiner concluded that it was less likely than not that the Veteran's Anxiety Disorder (first documented in 2005) was permanently aggravated by her service-connected GERD. The examiner reasoned that no scholarly research was found showing a link in the direction that GERD would worsen anxiety. During the lengthy interview in May 2014, the Veteran's own narrative did not link GERD to a worsening of her anxiety disorder. She did not even report GERD as an ongoing medical problem when asked. 

Based on a review of the Veteran's individual mental health psychotherapy and medication management treatment notes, the October 2015 VA examiner opined that there was no documentation that the Veteran's GERD was a cause of increased stress that would have contributed to the Veteran's anxiety in any way. A review of the Veteran's VA treatment notes showed that the Veteran had two VAMC mental health clinic therapy intakes in 2005 and 2008. She was also seen for medication at those times and four additional times between 2009 and 2012 by the VAMC. She was diagnosed with the following mental health diagnoses over the years: adjustment disorder with anxiety and depressed mood; Anxiety Disorder not otherwise specified; and, mood disorder not otherwise specified. The examiner noted that the Veteran did not have any additional VAMC mental health appointments listed since the May 2014 VA examination. The examiner stated that in the Veteran's 2005 VA mental health clinic intake and follow-up medication management appointment, it was noted that the Veteran was attending school through Vocational Rehabilitation and was referred to mental health due to stress. It was also noted that she had recently learned she was pregnant and was not happy about this. GERD was not mentioned as a distressing factor in these mental health notes. Gynecology notes indicated that the Veteran gave birth in January 2006. Her next VAMC mental health treatment was in December 2008 when she was seen for another intake and medication management appointment. She reported she was having some anxiety attacks related to situational events, including being a single mother, failing school, and having an abortion recently. GERD was not noted as a stressor. The next mental health encounter was in September 2009 at the VAMC when the Veteran reported ongoing situational stressors, including finances and on-going job concerns. Later that month, she became involved with HUD/VASH due to imminent eviction from her home. She participated in case management services through HUD/VASH. Her next mental health encounter was for medication management in May 2010 by the VAMC. Multiple stressors were noted at that time including her grandmother's death, legal issues, and recently being diagnosed with a "tumor." In July 2010, the Veteran was seen by the VAMC again for medication management. This note indicated ongoing high stress levels and thyroid issues. She was next seen in August 2012 for mental health medication management by the VAMC. The treatment note at that time documented the Veteran's ongoing anxiety, which was triggered by stressful situations. The examiner noted that none of these VA treatment records mentioned GERD as a contributor to the Veteran's anxiety.
Further, at the May 2014 VA examination, the examiner stated that the Veteran was assessed as having "occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress." In other words, the Veteran was only experiencing mild, transient impairment at that time.

Based on the VA treatment documentation, the Veteran's narrative, and available
scholarly research, the October 2015 VA examiner concluded that there was no indication that GERD had any impact on the Veteran's documented episodes of anxiety, much less that it could have permanently aggravated the anxiety beyond its natural progression. Based on treatment documentation, the examiner stated that the Veteran tended to seek treatment for anxiety when life stressors increased. In summary, the examiner provided a negative nexus medical opinion.

The VA examiner clearly reviewed the STRs and other evidence in the claims folder, in addition to the current medical literature. The examiner provided medical opinions that are supported by and consistent with the evidence of record. The examiner gave an alternative theory to address the etiology of the current acquired psychiatric disorder - namely, alcohol abuse. There is no positive evidence to the contrary of these medical opinions in the claims file. The treatment records do not provide contrary evidence. As such, service connection on a secondary basis is not warranted.

Finally, regarding the Veteran's alcohol abuse as described by the VA examiner, for claims, as here, received by VA after June 9, 1998, service connection is only potentially permissible for alcohol abuse/dependency if, for example, it is shown to be a symptom of an underlying psychiatric disorder - itself related to the military service. Otherwise, alcohol abuse/dependency is considered willful misconduct and therefore not in the line of duty and, hence, not service connectable as a matter of law. See Allen v. Principi, 237 F. 3d 1368 (Fed. Cir. 2001). The fact that no underlying psychiatric disorder has been etiologically linked to the Veteran's military service, in turn, rules out this possibility.

In reaching this decision, the Board has considered the Veteran's arguments in support of her claim, in addition to the Internet article submitted by her and the lay statements from her sister, fellow solider, friend, and employer. The Internet article describes the medical definition of generalized anxiety disorder. The Board acknowledges that the Veteran, her sister, her fellow solider, her friend, and her employer are competent, even as a layperson, to attest to factual matters of which they have first-hand knowledge, e.g., symptoms observed or experienced. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that lay evidence is one type of evidence that must be considered, and that competent lay evidence can be sufficient in and of itself. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). In Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009), and in Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit determined that lay evidence can be competent and sufficient to establish a diagnosis of a disorder when: (1) a layperson is competent to identify the medical disorder (noting that sometimes the layperson will be competent to identify the disorder where the disorder is simple, for example a broken leg, and sometimes not, for example, a form of cancer); (2) the layperson is reporting a contemporaneous medical diagnosis; or, (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. The relevance of lay evidence is not limited to the third situation, but extends to the first two as well. Whether lay evidence is competent and sufficient in a particular case is a fact issue. Id.

Regarding direct service connection, although the Veteran, her sister, her fellow solider, her friend, and her employer are competent to report that symptoms observed and/or experienced that they believe resulted in the Veteran's current acquired psychiatric disorder, the Board must still weigh the lay statements against the medical evidence of record. See Layno v. Brown, 6 Vet. App. 465 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). In making this credibility determination, the Board does not find the lay statements concerning the etiology of the Veteran's acquired psychiatric disorder to be credible, since her STRs make no reference to complaints of or treatment for an acquired psychiatric disorder, and since the first complaint of an acquired psychiatric disorder was not until 2005, five years after the Veteran's separation from the active duty. See Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995), aff'd per curiam, 78 F.3d. 604 (Fed. Cir. 1996); see also Macarubbo v. Gober, 10 Vet. App. 388 (1997) (holding that the credibility of lay evidence can be affected and even impeached by inconsistent statements, internal inconsistency of statements, inconsistency with other evidence of record, facial implausibility, bad character, interest, bias, self-interest, malingering, desire for monetary gain, and witness demeanor).

It is important to point out that the Board does not find that the lay statements lack credibility merely because they are unaccompanied by contemporaneous medical evidence. See Davidson, 581 F.3d at 1313, quoting Buchanan, 451 F.3d at 1337 ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence."). Rather, the lay statements are found to be incredible because they are inconsistent with the evidence of record, which fails to show psychiatric complaints during her active military service or until five years after her military discharge, and which contains only negative nexus medical opinions.

For the reasons set forth above, the Board finds that the lay statements regarding the etiology of the Veteran's acquired psychiatric disorder are not credible. Therefore, these statements do not warrant a grant of service connection or a determination that further development of the medical evidence is required. All other evidence of record, aside from the lay statements and Internet article in support of this current claim, is unfavorable to the claim for service connection for an acquired psychiatric disorder. 

Regarding secondary service connection, although laypersons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issue in this case (whether the Veteran's current acquired psychiatric disorder was caused by or aggravated by the service-connected GERD) falls outside the realm of common knowledge of a layperson. See Jandreau, 492 F.3d at 1377 n.4 (laypersons not competent to diagnose cancer). As a layperson, it is not shown that the Veteran, her sister, her fellow solider, her friend, and her employer possess the medical expertise to provide such an opinion. The only medical opinions of record addressing the claimed relationship are negative. No competent medical opinions linking the Veteran's current acquired psychiatric disorder to her service-connected GERD have been presented. The VA examiner considered the lay assertions and the Internet article submitted by the Veteran in forming the medical opinions, but ultimately found that the Veteran's current acquired psychiatric disorder was not related to her service-connected GERD. Thus, as previously stated, the medical evidence of record is only against the Veteran's claim. 

The Board notes that under the provisions of 38 U.S.C.A. § 5107(b), the benefit of the doubt is to be resolved in the claimant's favor in cases where there is an approximate balance of positive and negative evidence in regard to a material issue. The preponderance of the evidence, however, is against the Veteran's claim, and thus that doctrine is not applicable. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The Veteran's claim of entitlement to service connection for an acquired psychiatric disorder, to include depression, anxiety, adjustment disorder, and PTSD, to include as secondary to her service-connected GERD, is not warranted.


ORDER

The claim of entitlement to service connection for an acquired psychiatric disorder, to include depression, anxiety, adjustment disorder, and PTSD, to include as secondary to her service-connected GERD, is denied.



____________________________________________
DEBORAH W. SINGLETON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs