Citation Nr: 1710376 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 98-16 124 ) DATE
 )
 )


On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio



THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder.



REPRESENTATION

Veteran represented by: Mark R. Lippman, Attorney



ATTORNEY FOR THE BOARD

A. VanValkenburg, Associate Counsel



INTRODUCTION

The Veteran served on active duty from September 1978 to May 1991. He had additional service in the National Guard from May 1991 to October 1995. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from the March 1998 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. The Board has recharacterized the Veteran's claim as reflected on the title page of this decision to better reflect the Veteran's contentions. 

In November 1999, the Board remanded this claim to the RO for additional development. While the case was in remand status, the Veteran was scheduled to appear before a Veterans Law Judge for a hearing in Washington, D.C. in June 2003. The Veteran failed to report for the hearing, and has not provided an explanation for his absence or requested to reschedule the hearing. Accordingly, the Board considers his hearing request to be withdrawn. 38 C.F.R. § 20.704(d) (2016).

The Board initially denied entitlement to service connection for an acquired psychiatric condition in a November 2005 decision. The Veteran appealed the Board decision to the United States Court of Appeals for Veterans Claims (Court). In an November 2006 Joint Motion for Remand (JMR), the Court found the Board had failed to fulfill its duty to notify by failing to inform the Veteran of private records. 

Subsequent to Board remands for further development in May 2007 and August 2011, the Board again denied entitlement to an acquired psychiatric condition in an August 2012 decision. The Veteran appealed the Board decision to the Court. In a February 2014 Memorandum Decision, the Court found the Board had improperly relied on an inadequate VA examination in rendering its decision. 

In July 2014 the Board remanded the claim to the Agency of Original Jurisdiction (AOJ) for further development. The requested development as to the claim adjudicated below has been completed to the extent possible, and no further action is necessary to comply with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998).


FINDING OF FACT

The preponderance of the evidence is against a finding that the Veteran has an acquired psychiatric condition that is etiologically related to a disease, injury, or event which occurred in service.


CONCLUSION OF LAW

The criteria for entitlement to service connection for an acquired psychiatric condition have not been met. 38 U.S.C.A. §§ 1110, 1111, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duty to notify and assist

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

The Board acknowledges that fully compliant notice was provided after the initial adjudication of the claim in this case. Mayfield v. Nicholson, 444 F.3d 1328, 1333 (Fed. Cir. 2006). Nevertheless, the RO sent the Veteran adequate notification in the February and April 2004 notice letters. Additionally, the claim was most recently adjudicated in an August 2016 Supplemental Statement of the Case (SSOC). Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007); Prickett v. Nicholson, 20 Vet. App. 370, 377-78 (2006) (VA cured failure to afford statutory notice to claimant prior to initial rating decision by issuing notification letter after decision and adjudicating the claim and notifying claimant of such readjudication in the SOC). Therefore, with respect to the timing requirement for the notice, the Board concludes that to proceed with adjudication of this case at this time is not prejudicial to the claimant.

VA also has a duty to assist a Veteran in the development of a claim. That duty includes assisting the Veteran in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development as to the issue decided herein has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, private treatment records, relevant VA medical records, VA medical examinations, and the Veteran's own contentions. 

Service connection 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Certain chronic diseases, to include psychoses, although not shown in service, may be presumed to have incurred in or aggravated by service if they manifest to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. As discussed in further detail below, there is no showing of any chronic psychoses (such as schizophrenia) in-service, or continuous after separation, or which manifest to a degree of 10 percent or more within one year of separation from service.

To prevail on the issue of service connection, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

Facts and analysis

The Veteran asserts that an acquired psychiatric condition manifested in-service. 

The Veteran essentially contends that his in-service "nervous breakdown," associated suicide attempt, psychiatric hospitalization and a diagnosis of "schizophrenia" shows an initial manifestation of his acquired psychiatric condition. See VA Form 21-526 submitted March 18, 1997, Veteran's statement dated March 7, 1997. Alternatively, the Veteran asserts that after an assault by two people he requested a transfer from his unit and was instead relieved from a squad leader position and it resulted in tremendous stress. See notice of disagreement dated April 30, 1998 and Veteran's statement received March 28, 2002. Lastly, the Board notes that the Veteran has made multiple assertions regarding the murder of a military dependent wife which remains unsolved; of note, he believes that he gave a ride to a soldier who may have been responsible for the murder. See e.g., attorney's letter dated June 15, 2012. 

Throughout the appeal period the Veteran has been diagnosed with multiple acquired psychiatric conditions which include an anxiety disorder not otherwise specified, an unspecified anxiety disorder, alcohol dependence in sustained remission and borderline personality disorder. See December 2011 and July 2016 VA psychiatric examinations and private correctional facility mental health evaluation dated August 19, 2010. 

On review of all the evidence, lay and medical, the Board finds that the weight of the evidence is against finding that an acquired psychiatric disorder is etiologically related to service. 

The Veteran's substance abuse difficulties cannot be considered disabilities for service connection purposes in this particular case. See 38 U.S.C.A. §§ 105, 1110; 38 C.F.R. §§ 3.1(n), 3.301. To qualify for a limited exception to the general rule, it must be shown that substance abuse is clearly related to a service-connected disability. Allen v. Principi, 237 F.3d 1368 (Fed. Cir. 2001). The Veteran is not service connected for any condition. Thus, service connection for substance abuse as secondary to a service-connected disability is not warranted.

Likewise, service connection cannot be granted for the Veteran's diagnosed personality disorder, as it is not a disease or injury within the meaning of the law. Personality disorders are considered congenital or developmental defects and not diseases or injuries within the meaning of applicable legislation and, therefore do not constitute disabilities for VA compensation purposes. See 38 C.F.R. § 3.303, 4.9, 4.127. Service connection can only be granted for additional disability resulting from a mental disorder that is superimposed upon the personality disorder. 38 C.F.R. §§ 3.303(c), 4.9, 4.127; see also Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993). Here, the medical evidence does not show that the Veteran's condition was caused by or worsened by service, as discussed in further detail below. In this regard, the evidence does not support that any additional disability was superimposed upon the Veteran's personality disorder during service. 

The Veteran's service treatment records (STRs) and military personnel records show the existence of an in-service injury, illness or event. Notably, the Veteran received psychiatric treatment on multiple occasions including a psychiatric hospitalization due to an attempted suicide. He reported an assault and received emergency treatment of a lacerated lip due to the assault. Further, the Veteran complained of a being removed from a squad leader position while seeking psychiatric treatment. See e.g., STR dated August 7, 1980 (hospitalization due to adjustment reaction of adult life), military personnel record dated June 11, 1987 of a sworn statement of assault (assault) and associated emergency department nursing care record (laceration of lip) and STR dated September 13, 1988 (reports that he was relieved from squad leader position). The remaining question is whether there is a link between the Veteran's military service and his current acquired psychiatric condition.

As noted, the Veteran received in-service psychiatric treatment. In May 1980, while serving on active duty in Germany, the Veteran attempted to commit suicide by slitting his wrists after his girlfriend broke up with him. He was hospitalized at Walter Reed with an Axis I diagnosis of acute adjustment reaction and an Axis II diagnosis of borderline personality disorder. Later that month, however, a treatment note indicated that borderline personality disorder was the primary diagnosis. He also underwent treatment and therapy for an acute situational reaction, a borderline personality disorder, an inadequate personality disorder and latent schizophrenia. Following intensive therapy, he was returned to full active duty service. In September 1988, the Veteran sought treatment for an adjustment disorder with a depressed mood resulting from an incident in his unit in which he was relieved of his duties as a squad leader. Thereafter, he received five months of therapy, and in February 1989, his treating physician concluded that the situation "resolved" and he no longer had a psychiatric disorder. The Veteran had a normal psychiatric clinical evaluation in an April 1989 periodic examination. The Veteran endorsed nervous trouble and that he had 6 months of mental health treatment on the associated report of medical history. The examiner detailed that the Veteran had sought treatment for stress related to job circumstances and he had received a unit transfer with no problems since. Significantly, the Veteran again had a normal clinical psychiatric evaluation in his April 1991 exit examination despite a report of frequent trouble sleeping and that he received mental health treatment on his associated report of medical history. The examiner detailed that there was a mental evaluation for minor conflicts. 

In light of the finding that the Veteran no longer had a psychiatric disorder in February 1989 and a normal psychiatric examinations thereafter in 1989 and 1991, the Board finds that the STRs do not support a finding of an in-service chronic psychiatric condition, to include psychosis. On the contrary, the Veteran's service treatment records reflect that his psychiatric symptoms had resolved at the time of his separation from service in 1991. 

Importantly, post-service treatment records show that the Veteran did not seek treatment for a mental health disorder until March 1995 when he underwent a psychiatric evaluation at a VA Medical Center ("VAMC") at the advice of his attorney for an issue unrelated to his military service. At that time, he said he had been experiencing anxiety, regret and nervousness and reported that he had raped a 9-year-old girl. The VA clinician, however, did not diagnose him with a psychiatric or psychological disorder or disability. In 1995, he was convicted of sexual assault. However, prior to being incarcerated, he made several attempts to hang himself and was hospitalized with a diagnosis of major depression. Thereafter, he was placed on Prozac, but stopped taking the medication in October 1995 because he said it made him feel tired. A July 1996 treatment note indicated that major depression was resolved and the Veteran denied suicidal or homicidal ideations. A note from April 2004 gave no diagnosis and the Veteran reported that he did not want to be on the mental health caseload. The Veteran was evaluated again in August 2010 with a note that there were moderate psychosocial stressors related to his lengthy incarceration and the Veteran was diagnosed with anxiety disorder not otherwise specified and a history of polysubstance dependence. In summary, the Board finds that the evidence of record reflects a gap in time when he did not report psychiatric symptomatology between his separation from service in 1991 and when he had a psychiatric evaluation after raping a 9 year old girl in 1995. 

In December 2011, the Veteran was afforded a VA psychiatric examination. In reviewing his service treatment records, the VA examiner noted that the Veteran reported that he had been physically assaulted and beaten during an incident in service. Shortly thereafter, while serving as a sergeant, he was declared incompetent and was demoted to the rank of E2. He indicated that he felt his demotion was unfair and did not believe that he was incompetent. The examiner further noted that, according to a September 1988 statement, the Veteran's claim seemed to revolve around his anger at his chain of command for stripping him of his stripes due to a lack of leadership ability. The Veteran became so angry at his superior officer that he planned to "eliminate him." The Veteran was also obsessed with the murder of the wife of another soldier on base and believed that his assault may have been related to the murder, even though the woman's body was found far away from base. He also believed that, if he had been able to talk to his superior officer, authorities might have been able to find the perpetrators of the Veteran's assault and the murder might have been prevented. The examiner noted that the Veteran was obsessed with this thought and appeared to be more preoccupied with thoughts of this murder than with his own crime for which he was incarcerated, although, she noted that he did report feeling remorse for his crime. 

Based on the clinical evaluation, the VA examiner diagnosed the Veteran with anxiety disorder not otherwise specified, alcohol dependence in sustained remission and borderline personality disorder. His psychological and environmental problems involved being incarcerated with a long sentence. There was no evidence of psychosis or latent schizophrenia. She opined that his anxiety disorder not otherwise specified and borderline personality disorder were not likely related to any incident of military service, as his two psychiatric hospitalizations revolved around issues separate and apart from service: the first being a suicide attempt when his girlfriend left him, and the second suicide attempt several years after service prior to being incarcerated for his sex offense. Moreover, she noted that, while he felt badly about the loss of his military career, this loss was not related to anything other than his own actions. 

In February 2014, the Court found that the December 2011 VA examination was inadequate. Of note, the Court stated, "the examiner's focus upon an incident in service without any discussion of whether [the Veteran's] acquired psychiatric disorder was coincident with service requires remand to provide [the Veteran] with an adequate medical examination, one which provides sufficient detail to allow the Board to address the relevant question as to nexus."

The Veteran was afforded a VA psychiatric examination in July 2016. The VA examiner first opined that it was at least as likely as not that the Veteran initially manifested mental health symptoms during his active military service as there was no documentation of past or current mental health problems on his entry examination in December 1977. Further, the Veteran first received mental health treatment while stationed in Germany in 1980 when he was hospitalized following a suicide attempt. During his hospitalization, it was documented that the Veteran was in excellent health and that he had no administrative actions against him during his two years in the service prior to his suicide attempt. It was notable that the Veteran was under the influence of drugs and alcohol at the time of his suicide attempt. Also, the Veteran sought mental health treatment from September 1988 to February 1989 while stationed at Fort Drum and was diagnosed with an adjustment disorder. 

Thereafter, the VA examiner continued that it was less likely than not that the Veteran's currently diagnosed mental health condition was a continuation of (or occurred coincident with) the mental health condition that was first diagnosed while in the military. At the time of the Veteran's last mental health treatment while in-service it was documented in February 1989 that the Veteran's mental health issues were resolved and he was given no psychiatric diagnosis. The Veteran did not seek mental health treatment again until 1995 after his rape conviction. 

The VA examiner then found it was less likely than not that the Veteran's currently diagnosed mental health condition occurred as a result of his active military service. The Veteran was engaged in mental health treatment twice while on active duty due to the result of situational stressors. Once the stressful situations resolved, the Veteran did not engage in ongoing mental health treatment. Further, the Veteran was not involved in mental health treatment immediately following his time in service and only sought mental health treatment after he was convicted of rape and incarcerated in 1995. 

Ultimately, the VA examiner opined that the Veteran's condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The Veteran met the DSM-5 criteria for a diagnosis of unspecified anxiety disorder (formerly anxiety disorder not otherwise specified in the DSM-IV). Although the Veteran first sought mental health treatment while in-service on two occasions, the instances were related to situational stressors that were occurring at that time. It was likely that the Veteran's mental health issues in 1980s, which resulted in the Veteran attempting suicide and a hospitalization, were greatly exacerbated by his admitted substance abuse at the time. Once the stressors resolved, it appears that the Veteran did not experience ongoing mental health symptoms as evidenced by the Veteran not seeking ongoing mental health treatment and that the condition did not require psychiatric medication. There was no documentation that the Veteran experienced any impairment in occupational or social functioning during this time. He was honorably discharged and continued to serve in the National Guard until he was convicted of rape in 1995. The Veteran did not seek ongoing mental health treatment following his discharge from active service until his rape conviction. While incarcerated, the Veteran has only engaged in intermittent mental health treatment and has, at times, declined mental health services completely. It did appear that the Veteran felt much remorse and guilt related to the rape of a young girl, which occurred post-service. It appeared that the majority of the Veteran's mental health symptoms were related to the rape event and his incarceration over the past two decades and concerns of what will happen near the end of his incarceration. Thus it was the examiner's medical opinion that it is less likely than not (less than 50 percent probability) that the Veteran's current mental health symptoms are a continuation of those first diagnosed and treated while in the service.

The examiner added that with regard to the diagnosis of borderline personality disorder provided during his December 2011 VA examination, she opined that at the present time, the Veteran does not meet DSM-5 criteria for this diagnosis. The Veteran may have presented a different clinical picture during that examination. Further, since Veteran has been sober for over 20 years an alcohol use disorder was not diagnosed either. 

The Board finds the 2016 VA examiner's opinion to be of great probative weight as the opinion was based on a review of the claims file, history from the Veteran, and a thorough examination that included citations to pertinent evidence of record. The VA examiner not only considered whether the disability was incurred in as a result of service but also specifically addressed whether the Veteran's acquired psychiatric condition was coincident with service, by specifically stating the Veteran's current mental health symptoms are less likely than not a continuation of the symptoms he suffered and was treated for while in-service. Significantly, the examiner also offered the possible likely causes of the Veteran's psychiatric condition (guilt over rape, incarceration, concerns over life post-incarceration) in addition to providing the negative direct nexus opinion. 

The Veteran has submitted no competent nexus evidence contrary to the VA examiner's opinion. The Veteran has been allowed ample opportunity to furnish medical evidence in support of his claim, but he has not done so. 38 U.S.C.A. 
§ 5107(a) (claimant bears responsibility to support a claim for VA benefits). 

As to the Veteran's belief that his current psychiatric problems are related to his service, the Board acknowledges the holding of the U.S. Court of Appeals for the Federal Circuit in Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Here, however, the question of causation is a medically complex question and, as such, the Veteran is not competent to address etiology in the present case. 

Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply, and service connection for a psychiatric condition is not warranted. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).


ORDER

Entitlement to service connection for an acquired psychiatric condition is denied.







____________________________________________
S. HENEKS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs