Citation Nr: 1719079 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-08 515 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to a rating higher than 10 percent for residuals, back injury, with herniated nucleus pulposus, L4-5, L5-S1, postoperative discectomy and laminectomy (lumbar spine disability).

2. Entitlement to a rating higher than 10 percent for radiculopathy, right lower extremity.

3. Entitlement to a rating higher than 10 percent for radiculopathy, left lower extremity.

4. Entitlement to a rating higher than 10 percent for residuals, fracture of fifth metacarpal, right hand, status post fusion of fourth and fifth carpometacarpal joints.

5. Entitlement to a rating higher than 10 percent for residuals, excision of dorsal ulnar nerve neuroma, right hand, currently evaluated as 10 percent disabling.

6. Entitlement to a rating higher than 10 percent for central disc protrusion of the cervical spine at the level of C6-7 (cervical spine disability).

7. Entitlement to a total rating based on individual unemployability (TDIU).

8. Entitlement to service connection for an acquired psychiatric disorder, to include anxiety disorder, depressive disorder, posttraumatic stress disorder (PTSD), and opioid use disorder.


REPRESENTATION

Veteran represented by: John F. Ketcherside, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Biswajit Chatterjee, Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Navy from January 2001 to August 2001, and in the U.S. Army from September 2003 to February 2004 and from September 2007 to December 2010.

This appeal to the Board of Veterans' Appeals (Board) is from May 2012 and August 2014 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. He appealed for higher initial ratings for right hand, lumbar spine and associated radiculopathy disabilities. See Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). 

The Veteran testified at a travel Board hearing at the RO in November 2016, before the undersigned Veterans Law Judge (VLJ). A transcript is of record.

The Board acknowledges that the issues of entitlement to a higher initial rating for a cervical spine disability and a TDIU have been perfected, but not yet certified to the Board. The Board's review of the claims file reveals that the AOJ is still taking action on these issues. However, the Board is exercising its discretion to accept jurisdiction over these two additional issues. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of a TDIU and increased rating claims listed above are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

An acquired psychiatric disorder was not shown to have been diagnosed either in service or within a year of service discharge; and the evidence fails to establish that the Veteran's currently diagnosed acquired psychiatric disorder is etiologically related to service. Opioid use disorder due to heroin abuse was not incurred in the line of duty.


CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder, to include anxiety disorder, depressive disorder, posttraumatic stress disorder (PTSD), and opioid use disorder, have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.301, 3.303, 3.307, 3.309(a) (2016).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist 

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records, VA treatment records, and Social Security Administration (SSA) disability medical records have been obtained. Additionally, the Veteran testified at a hearing before the Board in November 2016.

The Veteran was also provided with a February 2016 VA examination of his claimed psychiatric disability (the reports of which has been associated with the claims file), which the Board finds to be adequate for rating purposes, as the examiner had a full and accurate knowledge of the Veteran's disability and contentions, and grounded the opinions in the medical literature and evidence of record. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Moreover, the examiner specifically found no current acquired psychiatric disorder can be diagnosed except for opioid use disorder, which as a substance abuse disorder is not eligible for service connection under VA regulations, discussed further below. Therefore, the Board finds a remand is not necessary for a VA examination and medical nexus opinion on whether the Veteran's current claimed acquired psychiatric disorder is etiologically linked to service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006), citing 38 U.S.C.A. § 5103A(d) and 38 C.F.R. § 3.159(c)(4). Moreover, neither the Veteran nor his representative has objected to the adequacy of the examination conducted. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection may also be granted for chronic disabilities, including psychoses, if such is shown to have been manifested to a compensable degree within one year after the Veteran was separated from service. 38 U.S.C.A. §§ 1110; 38 C.F.R. §§ 3.307, 3.309. As an alternative to the nexus requirement, service connection for this chronic disability may be established through a showing of continuity of symptomatology since service. 38 C.F.R. § 3.303(b). The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Here, the Veteran does not meet the criteria for presumptive service connection, as there is no indication of a psychosis during service or within a year following separation, that is, by December 2011. 38 U.S.C.A. § 1110; 38 C.F.R. §§ 3.307, 3.309(a).

The Board acknowledges that the Veteran's service treatment records reveal the diagnosis of an anxiety disorder. For instance, the September 2009 separation examination noted a diagnosis of anxiety disorder. Thus, the Board accepts there was in-service incurrence of an acquired psychiatric disorder.

Post-service, most importantly for his claim, the probative evidence shows that the Veteran does not have a diagnosed chronic acquired psychiatric disorder and thus fails to meet the preliminary requirement for service connection, namely showing of a current disability. It is well-established that the existence of a current disability is the cornerstone of any claim for VA disability compensation. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. The United States Court of Appeals for Veterans Claims (Court) has held that this requirement "is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim and that a claimant may be granted service connection even though the disability resolves prior to the Secretary's adjudication of the claim." McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); but see Romanowsky v. Shinseki, 26 Vet. App. 289, 293-94 (2013) (holding that "when the record contains a recent diagnosis of a disability prior to a veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency.").

Service connection for PTSD requires: (1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125 (a) [i.e., a diagnosis under DSM-5]; (2) a link, established by medical evidence, between current symptoms and a stressor event in service; and (3) credible supporting evidence that the claimed stressor event in service occurred. 38 C.F.R. § 3.304 (f). 

Post-service, a November 2011 VA mental health treatment consult diagnosed PTSD and depression, upon reports of a military career replete with foreign service deployments in Kuwait, Bosnia, Kosovo, and the African horn, including reported stressors of a grenade thrown in the chow hall in Kuwait in 2005, an IED explosion in 2007, and a fire fight with numerous casualties. Similarly, a March 2013 SSA initial psychiatric evaluation diagnosed PTSD, major depression and panic disorder with agoraphobia, which were apparently based largely on the Veteran's reported medical history, including an inaccurate report of PTSD while serving in Kuwait, Afghanistan and Iraq. Lastly, the December 2013 VA mental health examiner assigned an Axis I DSM-V diagnoses of PTSD and depressive disorder, based upon reports of stressors from foreign service deployments in Kuwait, Bosnia, Kosovo, and the African horn, including reported stressors of a combat in Kosovo and Bosnia. The Board's review of the service personnel records does not reveal such circumstances of service, such that the basis of these diagnoses is inaccurate and lacks probative value. For instance, a review of his DD Form 214s specifies no foreign service. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Thus, the above post-service diagnoses of an acquired psychiatric disorder of PTSD, depression, and panic disorder are not well-supported, and thus are not probative evidence in support of his claim. 

Rather, the February 2016 VA psychiatric examiner specifically found the Veteran does not presently have an acquired psychiatric disorder, aside from a DSM-V diagnosis of opioid use disorder (to be discussed further below). The examiner discounted the December 2013 examiner's finding of PTSD, noted the diagnosis was rendered upon a reported history of having served in Bosnia, Kuwait and Iraq, which the service records do not show. Also, the February 2016 examiner stated that, "through a telephone call with the Veteran, he reports he did not serve in Southwest Asia. It is therefore unclear [where] this information came from." This finding is well-supported and therefore highly probative negative evidence against the notion that the Veteran has a current diagnosed acquired psychiatric disorder, which is eligible for service connection. 

Absent a current diagnosed acquired psychiatric disorder that is eligible for service connection under VA law, there is also no possible means to relate this non-existent disorder to service, such as by a competent and credible nexus opinion, which is also not indicated by the record. Shedden, 381 F.3d 1163. As a lay person, the Veteran is competent to report what comes to him through his senses, but he lacks the medical training and expertise to provide a complex medical opinion, such as diagnosing an acquired psychiatric disorder or determining its etiology. See Layno v. Brown, 6 Vet. App. 465 (1994), Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). In Jandreau, the Federal Circuit specifically determined that a lay person is not considered competent to testify when the issue was medically complex. Therefore, while the Veteran disagrees with the conclusion that his present acquired psychiatric disorder began during or was otherwise caused by his military service, he is not considered competent (meaning medical qualified) to address the etiology of his acquired psychiatric disorder. As such, his opinion is insufficient to provide the requisite nexus. The Board also finds the Veteran's reported traumatic stressors during foreign service deployments to be inaccurate and inconsistent with his established service personnel records, so that they lack credibility and are not probative. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

To reiterate, the probative evidence shows a current disability of opioid use disorder, per the February 2016 VA examination report. Regarding the Veteran's substance abuse problems, the service connection entitlement statutes set forth in 38 U.S.C.A. § 1110 reads, "No compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs."

The regulatory provisions of 38 C.F.R. § 3.301 address line of duty and misconduct determinations. Under 38 C.F.R. § 3.301 (a), direct service connection may be granted only when a disability or cause of death was incurred or aggravated in line of duty, and not the result of the veteran's own willful misconduct or, for claims filed after October 31, 1990, the result of his or her abuse of alcohol or drugs. See also 38 C.F.R. § 3.1 (m).

The provisions of 38 C.F.R. § 3.301 (d), which specifically address line of duty determinations with respect to abuse of alcohol or drugs, state as follows:

Line of duty; abuse of alcohol or drugs. An injury or disease incurred during active military, naval, or air service shall not be deemed to have been incurred in line of duty if such injury or disease was a result of the abuse of alcohol or drugs by the person on whose service benefits are claimed. For the purpose of this paragraph, alcohol abuse means the use of alcoholic beverages over time, or such excessive use at any one time, sufficient to cause disability to or death of the user; drug abuse means the use of illegal drugs (including prescription drugs that are illegally or illicitly obtained), the intentional use of prescription or non-prescription drugs for a purpose other than the medically intended use, or the use of substances other than alcohol to enjoy their intoxicating effects.

As in this case, the controlling precedential authority makes clear that direct service connection may not be granted for a disability that arises from a veteran's abuse of alcohol or drugs. Allen v. Principi, 237 F.3d. 1368 (Fed. Cir. 2001).

Accordingly, because the Veteran's substance abuse disorder is not shown to be caused by or secondary to a service connected disability, it must be denied.

ORDER

The claim for service connection for an acquired psychiatric disorder, to include anxiety disorder, depressive disorder, posttraumatic stress disorder (PTSD), and opioid use disorder, is denied.


REMAND

During his November 2016 Board hearing, upon inquiry from his representative, the Veteran stated that his legs condition "gets worse, it seems like every year" and similarly testified that his hand condition has gotten worse. Board hearing transcript, at 17-18. He also testified that his neck pain has gotten worse. Id., at 18. As the claimed disabilities may have worsened since his most recent examinations, the Board finds that a current examination of his bilateral lower extremity radiculopathy and right hand conditions, respectively, is warranted. Proscelle v. Derwinski, 2 Vet. App. 629, 632 (1992); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994); Snuffer v. Gober, 10 Vet. App. 400 (1997); VAOPGCPREC 11-95, 60 Fed. Reg. 43, 186 (1995).

Moreover, the Court of Appeals for Veterans Claims (Court/CAVC) issued the precedential case of Correia v. McDonald, 28 Vet. App. 158 (2016), which also requires the Board to remand the increased rating claims for the lumbar spine disability and neck/cervical spine disability. In Correia, 28 Vet. App. at 158, the Court recently held that the final sentence of 38 C.F.R. § 4.59 (painful motion) requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. However, the Board observes that the December 2013 and July 2014 VA cervical and thoracolumbar spine examinations did not, per 38 C.F.R. § 4.59, report range of motion in terms of the Veteran's active motion, passive motion, weight-bearing motion, and non-weight-bearing motion. Pursuant to the Court's guidance in Correia, another examination should be afforded to the Veteran to report all ranges of motion in terms of the Veteran's active motion, passive motion, weight-bearing motion, and non-weight-bearing motion. 

At the Veteran's hearing, there was also an indication of upcoming VA treatment for orthopedic problems. See Board hearing transcript, at 28. On remand, the AOJ should obtain any outstanding VA treatment records. Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

The increased rating claims are inextricably intertwined with the TDIU claim, inasmuch as they concern the occupational impairment due to the service-connected orthopedic disabilities. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final decision on one issue cannot be rendered until a decision on the other issue has been rendered); Ephraim v. Brown, 82 F.3d 399 (Fed. Cir. 1996) (claims are inextricably intertwined when they have common parameters, such as when the outcome of one may affect the outcome of the other. And to avoid piecemeal adjudication of these types of claims, they should be considered together).




Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain any outstanding treatment records from all pertinent VA treatment facilities, to specifically include the Albany, New York VAMC and Memphis, Tennessee VAMC, dated since March 2016. See 38 C.F.R. § 3.159 (c)(2) (2016).

2. Schedule the Veteran for a VA examination to determine the current nature and severity of his neck/cervical spine disability, lumbar spine disability and associated radiculopathy of the right and left lower extremities. In so doing, the examiner should ensure, consistent with 38 C.F.R. § 4.59, that the examination report include the results of the Veteran's active motion, passive motion, weight-bearing motion, and non-weight-bearing motion, in addition to the results following repetitive motion testing. If it is not possible to complete any of the range of motion testing described above or concludes that the required testing is not necessary in this case, it should be explained why. 

The examiner should also discuss the functional impairment, if any, that that the Veteran's neck/cervical spine disability, lumbar spine disability and associated radiculopathy of the right and left lower extremities, have on his ability to secure and maintain substantially gainful employment. Also, comment on the collective occupational impact of all of his service-connected disabilities.

3. Schedule the Veteran for a VA examination to determine the current nature and severity of his right hand disability's orthopedic and neurological manifestations. 

The examiner should also discuss the functional impairment, if any, that that the Veteran's right hand disabilities have on his ability to secure and maintain substantially gainful employment. Also, comment on the collective occupational impact of all of his service-connected disabilities.

4. Then readjudicate the remaining claims. If these claims are not granted to the Veteran's satisfaction, send the Veteran and his representative a supplemental statement of the case and allow an appropriate time for response.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs